STATE OF NEBRASKA, APPELLEE, v. CHARLES HOWARD, APPELLANT.

225 N. W. 2d 391

Filed January 23, 1975. No. 39542.

Leo M. Bayer, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

This is an appeal from an order revoking an order of probation. The defendant had pled guilty in the county court to a charge of trespass. § 28-588.01, R. S. Supp., 1972. He was placed on probation. The order of probation provided, among other conditions, that he should not "(d). Be found in a state of intoxication in any public place or any automobile." By motion and affidavit, the county attorney asked that the probation be revoked for violation of the condition mentioned. A hearing was held in the county court, after which defendant's probation was revoked. The defendant was sentenced to serve 60 days in the county jail. He appealed to the District Court where the order was affirmed. He then perfected his appeal to this court.

On this appeal only one issue requires consideration and that is the sufficiency and competency of the evidence to sustain the finding that the condition was violated.

A review of the evidence is necessary. On November 28, 1973, at about 6:30 p.m., two police officers of the city of Alliance responded to an accident call. They found the defendant inside an overturned automobile in an apparent state of unconsciousness. He had a cut on his forehead and had apparently received a severe blow across the face in the area of the bridge of the nose. The defendant was the only occupant of the vehicle. One of the officers detected the odor of alcoholic liquor on the defendant's breath. This officer placed a radio call for an ambulance, which promptly responded and immediately took the defendant to a hospital. At about the time the call for the ambulance was placed, the officer also called the police sergeant on duty and asked him to go to the hospital and obtain a sample of the defendant's blood. The sergeant arrived at the hospital at about the same time as the ambulance and, while the defendant was still on the table in the emergency room and unconscious, directed a nurse to draw a blood sam-

ple. Moments thereafter, the defendant recovered consciousness, was reexamined by a physician and immediately released. He left the hospital, walking without assistance. Then, apparently at the request of the police sergeant, he went to the police station in the automobile of friends and relatives for the purpose of getting the accident investigation completed. At the station he was interrogated by one of the police officers who had responded to the accident call. The defendant told the officer, among other things, that he was not the driver of the automobile when the accident occurred and gave him the name of the person whom he claimed was driving. The defendant, following the interview, left the station. All these events occurred within about 30 minutes of the time the officers reached the accident scene. The police officers, including the sergeant, affirmatively testified that they had not placed the defendant under arrest. Later, the blood sample was examined by a laboratory technician who submitted a written report indicating alcoholic content of the blood was .33 of 1 percent. At that time the proceedings for revocation of probation were commenced, an arrest warrant issued, and defendant was taken into custody.

At trial, the officer who conducted the investigation testified that neither defendant's speech nor action was seemingly affected by any alcohol he may have consumed. The only way the officer could tell he had consumed alcoholic liquor was by the odor on his breath. The laboratory report was offered in evidence. No foundational testimony whatever was offered. No expert or other supporting testimony was tendered as to the test methods employed in analyzing the blood. Nor was there testimony as to the effect of a given percentage of alcohol in the body fluid. Objection was made on the grounds of immateriality and that the record disclosed the blood sample had been drawn without the consent of the defendant and without his having been

placed under arrest. The court overruled the objection and received the evidence.

In this court the briefs of both parties are devoted to discussing the sufficiency of the evidence. The defendant does so in the terms of the lack of expert testimony as to the effect of a given percentage of alcohol in the blood and upon the inapplicability of the doctrine of judicial notice as to such effect. He contends that consequently the report is insufficient to support the finding. The State argues that section 39-727, R. S. Supp., 1973, now section 39-669.07, R. R. S. 1943, equates "under the influence of alcoholic liquor" and having "ten-hundredths of one per cent or more by weight of alcohol in . . . body fluid" and therefore no testimony of any kind is necessary to establish the connection between the alcoholic content of the blood and its effect in producing a state of intoxication.

It is clear from the arguments of counsel before the county court as shown in the record that the issue in connection with the offer and receipt of the chemistry report was its competence. It is also clear that the defendant, through his counsel, waived technical foundational requirements, such as tracing the sample and the qualifications and testimony of the person who made the test, and was questioning solely the competence of the report as evidence. The county attorney, in his argument, mentioned the provisions of section 39-727.03 et seq., R. R. S. 1943, now section 39-669.08 et seq., R. R. S. 1943. He made specific reference to an asserted right provided by statute to take a blood sample of an unconscious person. It is apparent that the statute referred to is section 39-669.10, R. R. S. 1943. He then went on to point out that these statutes are not applicable because the case is not a prosecution involving the operation of a motor vehicle and that the defendant was not under arrest, and indicated that the State relied upon Schmerber v. California, 384 U. S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908. He asserted that if probable cause to believe

the defendant guilty of being intoxicated existed, the police could compel the giving of a blood sample even if they had to sit on the defendant to enable the medical personnel to take the sample, irrespective of whether he was under arrest at the time.

We think the prosecutor misreads both Schmerber v. California, *supra,* and the state of the law in Nebraska. The effect of the argument is to claim that the right of the State to forcibly take a blood sample from a person charged with the offense of intoxication is unrestricted except for the existence of probable cause to believe that he is guilty of that charge, despite the fact that in those cases coming within the terms of the implied consent statute, section 39-669.08 et seq., R. R. S. 1943, the right to take such sample and make such test is restricted by the special requirements of those sections. No statute or decision of this court, or any other that we can find, supports the State's position. We will later analyze the statute. Let us first consider the holding in Schmerber v. California, *supra.*

That opinion makes it clear that Fourth Amendment strictures against unreasonable searches and seizures do apply to searches of the person which embody penetration of the body, as in this case by drawing blood. The court there said: "But if *compulsory administration of a blood test* does not implicate the Fifth Amendment, it *plainly involves the broadly conceived reach of a search and seizure under the Fourth Amendment.* . . . It could not reasonably be argued, and indeed respondent does not argue, that the administration of the blood test in this case was free of the constraints of the Fourth Amendment. . . . the Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the

means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness." (Emphasis supplied.) Schmerber v. California, *supra*. The court in Schmerber justified the search on the basis of reasonable cause, the particular exigent circumstances of the case, and as an incident to arrest. The charge was operating a motor vehicle while under the influence of intoxicating liquor. The car the defendant was operating was involved in a collision. The defendant was observed both at the scene and at the hospital to which he was taken. There were clear indications of intoxication. Defendant was placed under arrest at the hospital approximately 2 hours after the accident. At that time, over the defendant's objection, and at the direction of the arresting officer, the blood sample was taken by trained medical personnel.

The court said in upholding the reasonableness of the search in that case: "The interests in human dignity and privacy which the Fourth Amendment protects forbid any such intrusions on the mere chance that desired evidence might be obtained. In the absence of a clear indication that in fact such evidence will be found, these fundamental human interests require law officers to suffer the risk that such evidence may disappear unless there is an immediate search.

"Although the facts which established probable cause to arrest in this case also suggested the required relevance and likely success of a test of petitioner's blood for alcohol, the question remains whether the arresting officer was permitted to draw these inferences himself, or was required instead to procure a warrant before proceeding with the test. Search warrants are ordinarily required for searches of dwellings, and, absent an emergency, no less could be required where intrusions into the human body are concerned. . . .

"The officer in the present case, however, might reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a

warrant, under the circumstances, threatened 'the destruction of evidence,' Preston v. United States, 376 U. S. 364, 367. We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system. Particularly in a case such as this, where time had to be taken to bring the accused to a hospital and to investigate the scene of the accident, there was no time to seek out a magistrate and secure a warrant. Given these special facts, we conclude that the attempt to secure evidence of blood-alcohol content in this case *was an appropriate incident to petitioner's arrest.* . . .

"We thus conclude that the present record shows no violation of petitioner's right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. It bears repeating, however, that we reach this judgment only on the facts of the present record. The integrity of an individual's person is a cherished value of our society. That we today hold that the Constitution does not forbid the States minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." (Emphasis supplied.) Schmerber v. California, *supra.* It is clear from what has been quoted from Schmerber that the State's position at trial is not supported by the holding of that case.

The prosecutor's position that the only requirement necessary to permit the forced taking of a blood sample from a person who is suspected of intoxication can scarcely stand scrutiny in the light of the stringent requirements laid down by our Legislature in the implied consent statutes which relate to much more serious offenses "arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor." § 39-669.08, R. R. S. 1943. These statutes permit the taking of a blood sample with-

out warrant and without consent, where "reasonable grounds" exist to believe the person was driving on a public highway while under the influence and where that person has been "arrested for any offense arising" out of the operation of a motor vehicle while under the influence of alcoholic liquor.

Under the provision of the statutes, if the accused has not been placed under arrest the sample may not be taken without consent. Otte v. State, 172 Neb. 110, 108 N. W. 2d 737; Prigge v. Johns, 184 Neb. 103, 165 N. W. 2d 559; State v. Baker, 184 Neb. 724, 171 N. W. 2d 798; State v. Seager, 178 Neb. 51, 131 N. W. 2d 676. Before the result of such a test is valid under the statute, the various other requirements of the statute must be complied with. Otte v. State, *supra;* Prigge v. Johns, *supra;* State v. Seager, *supra.* Under the provisions of section 39-669.10, R. R. S. 1943, blood may be withdrawn from an unconscious person, but even in that case the requirements of section 39-669.08, R. R. S. 1943, and related sections, including the provision of arrest, must be complied with. Otte v. State, *supra.* Such is not only the apparent holding in the case cited, but also follows from a reading of the various provisions of the statute.

If it be claimed that section 39-669.10, R. R. S. 1943, and subsection (1) of section 39-669.08, R. R. S. 1943, afford an independent basis for withdrawing the blood of an unconscious person, such a contention cannot stand under a close examination of the statutes. The sections are in pari materia and must be construed together. Stevenson v. Sullivan, 190 Neb. 295, 207 N. W. 2d 680. Such a reading would ignore the specific reference in section 39-669.10, R. R. S. 1943, to the consent under section 39-669.08, R. R. S. 1943. If section 39-669.10, R. R. S. 1943, were independent, then the immunity provided for medical personnel under section 39-669.12, R. S. Supp., 1974, would not be applicable for that section refers only to section 39-669.08, R. R. S. 1943. The Legislature could hardly have intended such a result.

In any event, the following propositions are clearly the law in this state. In the absence of a valid authorizing statute, such as section 39-669.08 et seq., R. R. S. 1943, the results of a test of blood for alcoholic content are inadmissible where the blood sample is taken involuntarily and the constitutional requirements of the Fourth Amendment to the United States Constitution have not been satisfied. Vore v. State, 158 Neb. 222, 63 N. W. 2d 141; Annotation, 127 A. L. R. 1514; Schmerber v. California, *supra*. Likewise the provisons of the implied consent statutes are applicable only to prosecutions for offenses arising out of acts alleged to have been committed while the person was driving or was in the actual physical control of a motor vehicle while under the influence of alcoholic liquor. § 39-669.08, R. R. S. 1943; Hoffman v. State, 160 Neb. 375, 70 N. W. 2d 314; Raskey v. Hulewicz, 185 Neb. 608, 177 N. W. 2d 744. These two cases, decided under an earlier version of the implied consent statute, clearly require this construction of the present statute.

Thus, the State may not, in this case, resort to the implied consent statutes to supply the missing correlation between the blood analysis report and the possibility of defendant's intoxication. Moreover, in the absence of some statute making provison for the effect to be given a test of body fluid for alcoholic content, expert testimony is necessary to make the results admissible. Raskey v. Hulewicz, *supra*. We believe that case disposed of any argument that judicial notice may properly be taken of the effect of a given percentage of alcohol in a human being. Barring a legislative judgment, this area is not one in which a sufficient unanimity of readily ascertainable scientific opinion exists so as to allow for the substitution of judicial research for expert testimony. Rather, the question of intoxication can present issues, the resolution of which can vary greatly under the circumstances. See, Houghton v. Houghton, 179 Neb. 275,

137 N. W. 2d 861; Colvin v. Powell & Co., Inc., 163 Neb. 112, 77 N. W. 2d 900.

We have held that a finding that a defendant has violated his probation must be established by clear and convincing evidence. State v. Parker, 191 Neb. 263, 214 N. W. 2d 630. A concomitant of that principle is, of course, that the evidence must be competent for the purpose offered. There is in this case no clear and convincing competent evidence that the defendant violated the terms of his probation.

REVERSED AND DISMISSED.