51079. DICKERSON v. THE STATE.

BELL, Chief Judge.

This appeal from a revocation of probation is controlled adversely to the appellant by *Johnson v. State,*

214 Ga. 818 (108 SE2d 313) and by many cases which have applied *Johnson* such as *Sellers v. State,* 107 Ga. App. 516 (130 SE2d 790); *Scott v. State,* 131 Ga. App. 504 (206 SE2d 137) and *Clackler v. State,* 130 Ga. App. 738 (204 SE2d 472). It would indeed be ridiculous to hold (as appellant would have us do) that where an act on which the revocation is based is a felony, that it is erroneous for the hearing judge to have based the revocation on that accusation unless the accused shall have first been tried and found guilty of the criminal charge. To hold that would be to elevate a felony to a legal status more respectable than an ordinary and reasonable condition expressed in a probationary sentence, the violation of which would not constitute even a misdemeanor.

*Johnson* held: "That a probationer is not entitled to a trial by jury for determining whether the conditions of a probation order have been breached; a revocation hearing is not a 'trial' to determine the guilt of a probationer for the commission of a misdemeanor or a felony; a hearing of this nature is not a trial on a criminal charge but is one to determine judicially whether the conduct of the probationer has conformed to the course outlined in the order of probation; and whether those conditions have been breached is to be determined by the court. To *Johnson's* holdings the Court of Appeals has added other criteria such as that slight evidence is both essential and enough to authorize revocation, *Sellers,* supra; that it is not required that the court in order to revoke be convinced beyond a reasonable doubt that defendant has violated a condition of his probation. *Adkins v. State,* 134 Ga. App. 507 (215 SE2d 270).

In this case the evidence authorized the revocation. The evidence is far more than "slight," that the probationer committed the felony of rape.

The judgment of the trial court revoking the probationary sentence of the appellant is affirmed.

*Judgment affirmed. Deen, P. J., Quillian, Stolz and Marshall, JJ., concur. Pannell, P. J., Evans, Clark and Webb, JJ., dissent.*

SUBMITTED SEPTEMBER 16, 1975 — DECIDED NOVEMBER 21, 1975 — REHEARING DENIED DECEMBER 4, 1975.

*Ballard, Thigpen & Griffith, George W. Griffith,* for appellant.

*John Strauss, District Attorney,* for appellee.

WEBB, Judge, dissenting.

On December 4, 1974, Clara Belle Benton swore out a warrant alleging that she had been raped and robbed by the defendant Dickerson. Three days later Dickerson turned himself in and was incarcerated. He was subsequently indicted for rape by the grand jury in the January Term, 1975, of the Newton Superior Court, and on January 17, seeking to exercise his Sixth Amendment rights, Dickerson filed a demand for a speedy trial. This demand, however, was not to be realized. On that same day, Dickerson, who was under a ten-year probationary sentence on a guilty plea to burglary, was served with a petition for the revocation of his probation. The petition alleged that he had violated the terms and conditions of his probation by committing the crimes of rape and robbery.

On January 20, a probation revocation hearing was conducted. Clara Belle Benton testified that defendant forcibly robbed her and raped her. This testimony, however, was contrary to previous statements she had made, self-contradictory in several material aspects and vague in response to cross examination. Witnesses for the defense stated facts directly contradicting the testimony of the prosecutrix and supporting Dickerson's testimony which denied any participation in the matter. Additionally, there was testimony that the physical condition of Mrs. Benton and her clothing following the alleged incident was inconsistent with her assertion of a forcible rape having occurred in an area filled with broken glass and debris.

At the close of the evidence, the trial judge deferred judgment, stating that he wanted to think about the case "overnight," and remanded Dickerson to jail until he made a decision. Some two and a half months later, on April 3, judgment was entered revoking five years of Dickerson's probation on the ground that he had violated

its terms in committing the offenses of rape and robbery by force.

Dickerson contends that the proceedings resulting in his imprisonment deprived him of due process of law, and that because Georgia law requires only "slight evidence" of a violation of probationary conditions, he has been confined to prison since January and has lost his liberty for five years on charges which are unsupported by substantial evidence. Thus, it is urged, Georgia's legal standard of evidence in probation revocation hearings can lead to arbitrary and unreasonable decisions effectively denying due process rights. Dickerson further argues that where revocation of probation is based solely upon new criminal charges, due process requires a criminal conviction or guilty plea as a condition precedent to revocation.

1. Under our statutes, the trial court is empowered to determine whether a violation of the terms of probation has been committed. Code Ann. §§ 27-2502, 27-2713. Although the probation revocation hearing is brought under provisions of the Criminal Code, our courts have declared this action to be "of a civil nature." See *Wilburn v. State,* 140 Ga. 138, 140 (78 SE 819). In determining whether a violation has in fact occurred, however, the trial judge is not bound by the strict rules of evidence otherwise applicable to both civil and criminal proceedings. See *Sellers v. State,* 107 Ga. App. 516 (130 SE2d 790); *Scott v. State,* 131 Ga. App. 504 (206 SE2d 137). "It is not necessary that the evidence support the finding beyond a reasonable doubt or even by a preponderance of the evidence." *Allen v. State,* 78 Ga. App. 526, 528 (51 SE2d 571); *Price v. State,* 91 Ga. App. 381 (2) (85 SE2d 627). Only "slight evidence" has been required to show that the defendant violated the conditions of his probation. *Faulkner v. State,* 101 Ga. App. 889 (115 SE2d 393); *Hinton v. State,* 127 Ga. App. 853 (195 SE2d 472).

This minimal evidentiary standard was largely the result of the view that probation is granted as a matter of privilege, not as a matter of right. *Johnson v. State,* 214 Ga. 818, 819 (108 SE2d 313); *Cross v. Huff,* 208 Ga. 392, 396 (67 SE2d 124). However, "the concept that

constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege' " has now been specifically rejected by the United States Supreme Court in Graham v. Richardson, 403 U. S. 365, 374 (91 SC 1848, 29 LE2d 534). Moreover, the principle enunciated in cases such as Escoe v. Zerbst, 295 U. S. 490 (55 SC 818, 79 LE 1566), Burns v. United States, 287 U. S. 216 (53 SC 154, 77 LE 266) and Ughbanks v. Armstrong, 208 U. S. 481 (28 SC 372, 52 LE 582), that since parole or probation is only a privilege it may be summarily revoked, has now been discarded. Graham v. Richardson, supra; Bell v. Burson, 402 U. S. 535 (91 SC 1586, 29 LE2d 90); Pickering v. Board of Education, 391 U. S. 563 (88 SC 1731, 20 LE2d 811). See generally Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv. L. Rev. 1439 (1968). In my view, it necessarily follows, therefore, that decisions of this court exemplified by *Sellers v. State,* 107 Ga. App. 516, supra, and *Scott v. State,* 131 Ga. App. 504, supra, which rely on the earlier U. S. Supreme Court decisions, must be disapproved and overruled.

The view now taken by the Supreme Court is that "Whether any procedural protections are due depends on the extent to which an individual will be 'condemned to suffer grievous loss.' Joint Anti-Fascist Refugee Committee v. McGrath, 341 U. S. 123, 168... The question is not merely the 'weight' of the individual's interest, but whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment... Once it is determined that due process applies, the question remains what process is due. It has been said so often by this court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands. 'Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.' Cafeteria & Restaurant Workers Union v. McElroy, 367 U. S. 886, 895 (1961)." Morrissey v. Brewer, 408 U. S. 471, 481 (92 SC 2593, 33 LE2d 484).

In Morrissey the court determined that parole revocation is not a part of the criminal process and therefore not subject to "the full panoply of rights due a defendant." But it concluded that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty," and since parole revocation inflicts a "grievous loss" on the parolee as well as on others, "[i]ts termination calls for some orderly process, however informal." 408 U. S. 480, 482. The court subsequently determined that despite "undoubted minor differences" between parole and probation, the revocation of either is "constitutionally indistinguishable"; thus, probationers and parolees are entitled to the same due process rights. Gagnon v. Scarpelli, 411 U. S. 778, 782 (n.3) (93 SC 1756, 36 LE2d 656).

Our probationary system constitutes a vital part of this state's criminal justice. Through continued supervision in a non-institutional setting, the convicted individual is given a fair chance at rehabilitation, as well as the opportunity to become a contributing and responsible member of society. Where, however, the conditions of probation have been violated, the state has a substantial interest in being able to incarcerate that individual under his previously imposed sentence without undue burden. It is for this reason that the "full panoply" of rights due a defendant in a criminal proceeding does not apply to probation revocation hearings.

The original probationary sentence is not, however, a mere benefit or gratuity bestowed by the grace of the state and revocable at its whim. Rather, our legislature has provided that a judge may impose a sentence to be served on probation where "[i]t appears to court upon a hearing of the matter that the defendant is not likely to engage in a criminal course of conduct and that the ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law. . . " Code Ann. § 27-2709.

Thus, the judicial finding implicit in the imposition of a probationary sentence should not be set aside unless the specific probationary conditions established by the court have, *in fact,* been violated. Like other judicial

proceedings, the probation revocation hearing seeks to do justice in accordance with due process of law. If, however, judicial actions are taken pursuant to an erroneous factual determination, the ends of justice are ultimately perverted.[1]

Where, in a probation revocation hearing, the great weight of the evidence supports the finding that no probationary condition has been violated, a determination to revoke probation is both unreasonable and arbitrary. Yet this result has heretofore been sanctioned by our courts under the "slight evidence" rule. This standard of proof falls far short of the due process requirements enunciated in Morrissey. There, the court held that due process requires "an informal hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the parolee's behavior." Morrissey v. Brewer, supra, p. 484. The assurances required by Morrissey are wholly absent under our "slight evidence" rule. Due process therefore requires us to abandon this standard of proof and in so doing to overrule our previous decisions in *Allen v. State,* 78 Ga. App. 526, supra; *Price v. State,* 91 Ga. App. 381 (2), supra; *Faulkner v. State,* 101 Ga. App. 889, supra; and *Hinton v. State,* 127 Ga. App. 853, supra.

In determining the proper quantum of evidence necessary to support a revocation of probation, the legitimate interests of the state as well as the due process rights of probationers should be borne in mind. Thus, the

---

[1]"The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information... And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness." Morrissey v. Brewer, supra, p. 484. These same considerations are applicable to probationers. See Gagnon v. Scarpelli, 411 U. S. 778, supra.

standard of proof beyond reasonable doubt, which is "bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free,"[2] has no cogent basis for application here. Rather, I believe that the determination should be based on a reasonable fact-finding process directed toward the attainment of the truth. Logic and fundamental fairness lead me to conclude that the government must prove the probationary violation by a preponderance of the evidence.[3]

It appears unlikely that this higher standard of proof will unduly hamper the state. Where a probationer does not contest the facts or where he admits them, any evidence introduced by the state will satisfy the burden. Only where the facts upon which the revocation is based are genuinely in dispute does this standard come into play; and in these instances, the judge still retains broad latitude as trier of fact. Most importantly, the requirement that a probationary revocation be supported by a preponderance of the evidence raises the level of certainty upon which revocation decisions are based. To that extent, this standard provides to probationers the fundamental fairness which has previously been denied them in determinations of fact in probation revocation proceedings, and strikes a fairer balance between the

---

[2]In the Matter of Samuel Winship, 397 U. S. 358, 372 (90 SC 1068, 25 LE2d 368).

[3]The imposition of a standard of the preponderance of the evidence has been recommended by the American Bar Association's Project for Standards of Criminal Justice. ABA Standards Relating to Probation, § 5.4 (a) (iii). This quantum of evidence is also required by a large number of foreign jurisdictions. See, e.g., State v. Salinas, 23 Ariz. App. 232 (532 P2d 174); Ivey v. State, 308 S2d 565 (Fla.); People v. Bennett, 25 Ill. App. 557 (323 NE2d 454); State v. Hughes, 200 NW2d 559 (Iowa); People v. Carter, 33 A. D. 2d 655 (349 NYS2d 813); Caudell v. State, 532 P2d 63 (Okla.); Scamardo v. State, 517 SW2d 293 (Tex.); Stone v. Shea, 113 N. H. 174 (304 A2d 647); State v. Howard, 193 Neb. 45 (225 NW2d 391).

interests of society and the due process rights of the probationer.

2. Dickerson also asserts that due process requires further protections where the revocation is based solely upon new criminal charges. He contends that the state should not be permitted to utilize the probationary system in order to circumvent its burden of proving guilt beyond a reasonable doubt by "trying the case" under the lower standard of proof and more relaxed evidentiary rules of revocation proceedings; and that the state's ability to choose its prosecutorial forum places an unfair disadvantage upon the defense. The choice, it is argued, is often based upon the prosecutor's success in prior plea bargaining negotiations and is, in any event, an arbitrary one, uncontrolled by judicial guidelines or standards.

Heretofore the rule was well established in this state that the probation revocation hearing "has no relation to the separate indictments charging the same criminal conduct as that upon which the probation sentence is sought to be revoked." *Blaylock v. State,* 88 Ga. App. 880 (5) (78 SE2d 537); *Bryant v. State,* 89 Ga. App. 891 (81 SE2d 556). The question here is whether the recent expansion of due process rights afforded to probationers in Morrissey v. Brewer, supra, and Gagnon v. Scarpelli, supra, now requires us to abandon our previous holdings. I am convinced that such a change is necessitated by current due process standards.

In proving the commission of a criminal offense, the state should not be permitted to avoid its burden of proof beyond a reasonable doubt merely because of an accused's status as a probationer. The present system, which gives the prosecutor unfettered discretion in choosing either criminal or probationary proceedings, is contrary to notions of fundamental fairness. The potential abuses inherent thereunder must be contained if we are to maintain our probationary system as a rehabilitative process rather than a prosecutorial tool.

The solution to the problem, long advocated by legal scholars and now being adopted by a growing number of jurisdictions,[4] lies in postponing the revocation

---

[4]See, e.g., State v. Causby, 269 N. C. 747 (153 SE2d

proceeding until after the disposition of the new criminal trial. In so doing, the probationer would be relieved of "the danger of abuses occurring as a result of the informality of the revocation hearing." People v. Carr, 524 P2d 301, 303 (Colo. 1974). Moreover, the possibility of having to undergo a criminal trial following a revocation hearing on the same charges would be eliminated. This contingency, under our present system, has allowed the state to "discover" the defense at the probation hearing and thus strengthen its case for trial; and the probationer, potentially facing two proceedings against him on a single charge, has been forced to compromise his Fifth Amendment rights prior to trial. People v. Carr, supra. These problems would be corrected by requiring an adjudication of the criminal charge in a single trial proceeding.

I disagree with the statement of the majority that this procedure would "elevate a felony to a legal status more respectable than an ordinary and reasonable condition expressed in a probationary sentence." In my view, it simply would insure that where the revocation of probation is based solely upon a new criminal charge, the probationer is entitled to have the criminal allegations tested in a criminal trial prior to revocation proceedings. By so holding, the decisions in *Blaylock v. State,* 88 Ga. App. 880 (5), supra, and *Bryant v. State,* 89 Ga. App. 891, supra, would of necessity be disapproved and overruled.

This view comports with the recommendations of the National Advisory Commission on Criminal Justice Standards and Goals (Report on Corrections, 1973, pp. 160-161); and the Model Penal Code of the American Law Institute (Tentative Draft Nov. 2, 1954, pp. 150-151). A similar conclusion was reached by the drafters of the

467) (1967); State v. Guffey, 253 N. C. 43 (116 SE2d 148) (1960); State v. Renew, 136 S. C. 302 (132 SE 613); Maes v. State, 84 N. M. 251 (501 P2d 695) (1972); State v. Morgan County Sup. Ct., 258 Ind. 485 (283 NE2d 349) (1972); People v. Amaro, 79 Misc. 2d 499 (358 NYS2d 900) (1974); United States v. Webster, 492 F2d 1048 (CA D.C. 1974); Small v. United States Board of Parole, 421 F2d 1388 (10th Cir. 1970).

American Bar Association Standards Relating to Probation § 5.3 at pp. 62-64 (1970), who stated: "A revocation proceeding based solely upon commission of another crime ordinarily should not be initiated prior to the disposition of that charge. However, upon a showing of probable cause that another crime has been committed by the probationer, the probation court should have discretionary authority to detain the probationer without bail pending a determination of the new criminal charge." I consider the latter recommendation, that the probation judge be vested with the discretionary authority to detain the probationer until the criminal charges are adjudicated, to be sound and would adopt it.

In summary, a revocation of probation may be based upon either (1) a violation of a probationary condition or (2) the commission of a new crime. Under the view here espoused, where revocation is based upon the breach of a probationary condition, the state would have the burden of proving such a violation by a preponderance of the evidence. Where it is alleged that the probationer has violated a probationary condition and has also committed a new crime, the probation judge may conduct a hearing regarding the non-criminal allegation or, in his discretion, may continue the hearing pending an adjudication of the criminal charge.

Where revocation is based solely upon the commission of a new crime, the revocation proceedings must be stayed until after the disposition of the criminal trial. If the probationer is acquitted of the charges, they may not be utilized to revoke his probation. If the accused is convicted or enters a guilty plea, his probation may be revoked, in the probation court's discretion, on the basis of the record of conviction and without another full-blown adversary proceeding.

I would reverse the judgment revoking Dickerson's probation on the grounds of the alleged rape and robbery by force of Clara Belle Benton with direction that a new hearing, if any, be held in accordance with the standards and procedures set forth herein.

I respectfully dissent. I am authorized to state that Presiding Judge Pannell and Judges Evans and Clark concur in this dissent.

EVANS, Judge, concurring specially with results of the dissent.

Harold Dickerson was placed on probation on September 27, 1972 for a period of 10 years, by the superior court of Alcovy Circuit. Thereafter defendant was charged with two later offenses alleged to have been committed on December 4, 1974, and he demanded in writing a jury trial on January 17, 1975. The state brought a motion to revoke his probation, and the trial judge ignored defendant's written motion for trial by jury as to said alleged later offenses, and revoked the probation on March 12, 1975.

Thus, the trial judge revoked his probation after hearing evidence, and ignored defendant's written motion for trial by jury. The trial judge had the discretion (provided he had the right to conduct the hearing on motion for revocation of probation) to enter an order of revocation on slight evidence against the defendant, and he had a wide discretion in considering the evidence of whether defendant was guilty or innocent of the last two alleged offenses. Code Ann. §§ 27-2502, 27-2713; *Johnson v. State,* 214 Ga. 818, 819 (108 SE2d 313). On the other hand, if defendant had been granted his written demand for trial by a jury, the jury would have been much more limited by rules, the presumption of innocence would have been in defendant's favor, and the jury would have had to find that he was guilty beyond a reasonable doubt, before convicting him.

The question for decision here is whether a trial judge may ignore a probationary defendant's demand in writing for trial by jury, and conduct a hearing himself on whether or not to revoke defendant's probated sentence. The difference between the two is as stated above; the trial judge has a wide discretion and no presumption of innocence exists in favor of defendant, and it is not required that his guilt be shown beyond all reasonable doubt before deciding that he is guilty of the two latter offenses. But the jury would have had to accord the defendant all of these rights. Needless to say, if the jury had decided that defendant was not guilty of the two latter offenses, the trial judge could not have then conducted a hearing and revoked the probated sentence.

It has been held that a defendant is not entitled as a matter of right to a jury trial on whether his probation should terminate. But here the sole reasons assigned for revocation is that defendant had committed two criminal offenses, and as to which he made a demand in writing for trial by jury. If he were tried by jury and acquitted, surely this would terminate the matter and render moot the hearing by the trial judge on the question of revocation. See Code § 110-501. A defendant has the right to plead autrefois acquit. *Jones v. State,* 226 Ga. 747 (1) (177 SE2d 231). On the other hand, if a jury trial were not accorded the defendant in accordance with his written demand, at the second term of the court thereafter the charges against him must be dismissed. Code Ann. §§ 27-1901, 27-1901.1.

But the majority and minority opinions discuss the overruling of earlier decisions which they consider binding unless overruled. But Justice Hill has solved this problem in the case of *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839), to wit: "Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796). It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that stability must give way to justice to the prisoner, then justice prevails. The full bench rule has been repealed." P. 631.

In other words, you need not hereafter overrule any case but it may simply be disregarded when it gets in the way of justice in the case under consideration.