RANDAL EUGENE SIGMAN

*v.*

WILLIAM WHYTE, *Superintendent,*

HUTTONSVILLE CORRECTIONAL CENTER

(No. 14856)

Decided July 15, 1980.

*Hugh Rogers, Jr.,* for petitioner.

*Chauncey H. Browning,* Attorney General, *Silas B. Taylor,* Assistant Attorney General, for respondent.

NEELY, CHIEF JUSTICE:

In this original habeas corpus we are asked to examine the procedure for appellate review of probation revo-

cation hearings. Randal Eugene Sigman pled guilty to unarmed robbery in the Circuit Court of Kanawha County in 1976. He received a five to eighteen year sentence which was suspended and he was placed on five years probation on 15 September 1976.[1] On 22 October 1978 relator was involved in an automobile accident and was charged with violating his probation by intentionally defacing personal property, possessing controlled substances, and assaulting an individual.

The preliminary hearing for probation revocation was held on 6 December 1978 before Judge Andrew Mac-Queen who dismissed the assault charges but found probable cause for revocation for defacing personal property and possession of controlled substances. Judge John Hey presided over the final revocation hearing and he excluded all evidence concerning the drugs seized from

[1] The probation terms and conditions were:

He shall not violate any of the laws of the State of West Virginia, or any other State or of the United States.

You shall not leave the State of West Virginia without the consent of this Court or the written consent of your supervising probation officer.

You shall comply with all of the rules and regulations of this Court and any orders or directives of your supervising probation officer.

You shall abstain from possessing or using any drugs described in the Uniform Controlled Substances Act, unless prescribed by a licensed physician.

You shall refrain from frequenting unlawful and disreputable places or consorting with disreputable persons.

You shall abstain from purchasing or drinking intoxicating beverages and you shall meet your family responsibilities.

You shall devote yourself to specific employment or occupation approved by your probation officer.

You shall make restitution in the amount of two thousand eight hundred dollars to Charleston General Area Medical Center and two hundred seven dollars and fifty-seven cents to Dr. John B. Markey, for the loss or damages caused by your crime.

You shall notify your probation officer of any change of your address or your employment within twenty-four hours.

You shall pay the cost of this proceeding.

Do you, Randall Eugene Sigman, agree with this Court to accept and abide by the foregoing terms and conditions of probation?

relator's automobile and dismissed the charges relating to possession; however, he found that relator had violated his probation by unlawfully injuring and defacing personal property. On 23 February 1979, Judge Hey reinstated the original sentence of five to eighteen years in the State penitentiary.[2]

Relator attempted to appeal his probation revocation on various grounds, but could not obtain a transcript of his revocation hearing. Beginning 24 April 1979 relator began requesting the Circuit Court of Kanawha County for a transcript of his hearings and other documents. Relator also persuaded his attorney to confer with Judge Hey and his attorney wrote a letter to the judge on 14 September 1979 which produced an order from Judge Hey that the circuit clerk send relator transcripts of the revocation hearings held in February 1979. Relator never received a copy of the transcripts. On 21 December 1979 relator mailed a Writ of Habeas Corpus to the circuit clerk which was sent by Certified Mail; however, the only response which he received was the clerk's signature upon receipt.

After another letter noting that he had not received any reply from the circuit court, relator filed *pro se* the present petition for Writ of Habeas Corpus in this Court on 2 April 1980, and the petition was granted 1 May 1980. Counsel for relator finally received transcripts of the revocation hearing 16 June 1980, one day before oral argument in this Court.

I.

This Court and the Supreme Court of the United States have set forth the procedural due process re-

---

[2] Petitioner alleges Judge Hey was biased against him after a 9 June 1978 hearing instigated by petitioner's probation officer which resulted in petitioner's commitment in the Weston State Hospital for forty days. Petitioner was returned to Charleston within a week, and brought before Judge Hey on 16 June 1978. Petitioner alleges that the unfavorable publicity which his employer succeeded in obtaining to secure a rehearing, resulted in bias against him. We find no merit in this argument.

quired for revocation of probation and parole, in each case expressly recognizing that probationers and parolees do not enjoy the same rights enjoyed by defendants before conviction.[3] In *State v. Fraley,* ___ W.Va. ___, 258 S.E.2d 129,130 (1979), we recognized that we must "begin with the proposition that the revocation of parole [probation] is not part of a criminal prosecution thus the full panoply of rights due a defendant in such a proceeding does not apply to parole [probation] revocation."[4] Since the *Morrissey, supra* decision, there seems to be no doubt that a probationer is entitled to a review of an order by which he is deprived of his liberty; however, we have not determined the precise nature of this review.

Probation is a statutory creation, and as such there is no requirement that direct appeal be the proper method of judicial review of a judgment revoking probation. In the absence of any statutory direction,[5] we hold that in order to reach the Supreme Court for a probation revocation hearing the relator must come in habeas corpus. While the ABA Standards suggest that the order revoking probation should be appealable after the offender has been resentenced,[6] we find that our sister states are divided on the method of review.[7]

---

[3] *Morrissey v. Brewer,* 408 U.S. 471 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778 (1973); *Conner v. Griffith,* 160 W.Va. 680, 238 S.E.2d 529 (1977); and, *Louk v. Haynes,* ___ W.Va. ___, 223 S.E.2d 529 (1976).

[4] Parole and probation revocation proceedings are, of course, equivalent in terms of the requirements of due process. *Gagnon v. Scarpelli,* 411 U.S. 778, 782 n.3 (1973).

[5] Our statute covering probation violations does not discuss methods of review. *Code* 62-12-10 [1955].

[6] ABA Project on Standards for Criminal Justice, Standards Relating to Probation, § 5.4(d) 65 (Approved Draft 1970).

[7] A cursory review of our sister states reveals: *State v. Ewing,* 522 S.W.2d 105 (Mo. 1975) (appealable by habeas corpus); *Pipkin v. State,* 292 So.2d 181 (Miss. 1974) (appealable by habeas corpus); *People v. Coleman,* 120 Cal. Rptr. 384, 533 P.2d 1024 (1975) (probation revocation appealable); *People v. Atencio,* 186 Colo. 76, 525 P.2d 461 (1974) (probation revocation appealable); and, *State v. Saavedra,* 5 Conn. Cir. 367, 253 A.2d 677 (1969) (probation revocation appealable at discretion of court).

Relator argues that the history of this case amply demonstrates that habeas corpus is not an adequate substitute for an appeal.[8] We disagree, however, because along with the right to come before this Court in habeas corpus any defendant whose probation has been revoked will have the right to counsel through the preparation of a habeas corpus petition to be brought before this Court. Our Court has historically granted extensive due process rights to probationers. In *State ex rel. Strickland v. Melton*, 152 W.Va. 500, 165 S.E.2d 90 (1968), we included the appointment of counsel at a probation revocation hearing, a higher standard than that imposed by *Gagnon, supra* which indicated that the appointment of counsel in all cases of probation revocation is not mandatory. We recommitted ourselves to this principle in *Louk, supra*. Obviously relator has a persuasive argument that the State was extraordinarily derelict in not providing him a transcript after it was ordered by the trial court. However, we feel that this decision and the review that the relator receives in this instance renders that argument moot.

The assistance of an appointed attorney who is familiar with filing habeas corpus insures that an individual who has had his probation revoked will have an opportunity to voice his grievances. The right to a transcript is not extended absolutely because we do not believe the cost to be justified; presumably the individual will be served by the same attorney who represented him during the probation revocation hearing who will be familiar with the facts. Since the grounds for questioning a probation revocation are simple and can be summarized in a petition for habeas corpus review, it is an undue burden to require the State to supply a transcript in

---

[8] Relator contends that our Court already endorsed the theory that appellate jurisdiction extends to these cases in *State v. Shawyer,* 154 W.Va. 522, 177 S.E.2d 25 (1970). Before the case *sub judice* there was some question of the proper method of appeal, and since review is always contemplated in judicial rulings, a writ of error was as good a way of bringing a void order to this Court's attention as any other.

every routine case. Once a *prima facie* case of illegal revocation is made on the habeas corpus petition, a transcript can be ordered.

## II.

Now we turn to the nature of the probation revocation hearing itself. Persons on probation who arguably violate a criminal law potentially face two proceedings: a hearing to revoke their conditional liberty and a criminal trial.[9] We refuse to require a criminal prosecution before a probation revocation.[10] We find probation revocation hearings sufficiently formal that we do not fear an innocent man being incarcerated. Criminal prosecutions are time consuming and expensive; furthermore, once the State has given a defendant the benefit of full due process to determine his guilt and has then restored

---

[9] An empirical sentencing study concluded that revocation of conditional liberty and criminal conviction are often used as alternatives to punish for criminal acts committed during probation. R. Dawson, *Sentencing: The Decision as to Type, Length, and Conditions of Sentence* 153 (1969). Cf. the report of the oral argument in *Mempa v. Rhay,* 389 U.S. 128 (1967), at 36 U.S.L.W. 3153-54 (U.S. 1967):

Mr. Justice Fortas asked if it was true that [one of the petitioners] had never actually been tried in connection with the criminal charges that led to the revocation of his probation, and thus to his imprisonment. This was true, replied . . . [counsel for the petitioners]. Mr. Justice Fortas then commented that this must make for efficient administration of justice. "Very efficient administration," replied . . . [the attorney].

The additional possible chilling effect upon a defendent's assertion of his fundamental constitutional right against self-incrimination is discussed in, Note, "Revocation of Conditional Liberty for the Commission of a Crime: Double Jeopardy and Self-Incrimination Limitations," 74 Mich L. Rev. 525 (1976). The possibility of self-incrimination could be avoided, however, if a court were to follow the rule in *People v. Coleman,* 13 Cal. 3d 867, 533 P.2d 1024 (1975) that testimony of a probationer at a probation revocation be inadmissible in subsequent proceedings save for purposes of impeachment or rebuttal.

[10] Once again our statute on probation violation, *W.Va. Code,* 62-12-10 [1955], is silent, but our statute on parole violation, *W. Va. Code,* 62-12-19 [1959], could be read to require that parole cannot be revoked for commission of a criminal offense unless defendant has been convicted of that offense.

him to conditional liberty, the State should not be required to spend the same amount of time and money again when it is determined that the second chance was unjustified.[11] Since one prison term will have the same rehabilitative and deterrent effect as two, it is not unreasonable to revoke probation and forego expensive prosecution. The passage of time alone will make it impossible to proceed with criminal charges after the defendant has completed his sentence on the original charge for which probation was revoked. *State ex rel. Leonard v. Hey*, ___ W.Va. ___, 269 S.E.2d 394 (1980).

In order to allay fears that the revocation proceeding will be abused by the law enforcement authorities we require that the evidence against the probationer be proven by a clear preponderance of the evidence. In requiring that the evidence be proven by a clear preponderance we have exceeded the standard of a preponderance of evidence which has been recommended by the ABA Project on Standards for Criminal Justice, Standards Relating to Probation, § 5.4(a) (iii) at 65 (Approved Draft 1970).[12] Proof beyond a reasonable doubt is not

---

[11] Most commentators recommend that the state try the probationer in a criminal trial first. Model Penal Code, *See* 301.3(2) (Official Draft) (1962); ABA Project On Standards for Criminal Justice, Standards Relating to Probation, § 5.3, at 62-65 (Approved Draft 1970); and, National Advisory Comm. on Criminal Justice Standards and Goals, Corrections *see* 5.4(5), 12.4(2) (1973). But the great majority of states have rejected their reasoning. *See, e.g., Rubera v. Commonwealth*, 371 Mass. 177, 355 N.E.2d 800 (1976); *Hughes v. State*, 264 Ark. 723, 574 S.W.2d 888 (1978); and, *People v. Nesbitt*, 86 Mich. App. 128, 272 N.W.2d 210 (1978).

[12] This standard has been adopted by a growing number of states. *See, e.g., People v. Amaro*, 70 Misc 2d 499, 358 N.Y.S. 2d 900 (1974); *State ex rel. Gash v. Morgan County Superior Court*, 258 Ind. 485, 283 N.E.2d 349 (1972); *People v. Smith*, 105 Ill. App. 2d 14, 245 N.E.2d 13 (1969); and, *State v. Causby*, 269 N.C. 747, 153 S.E.2d 467 (1967). Some courts require only "slight evidence" to show that probationer violated probation, *Dickerson v. State*, 136 Ga. App. 885, 222 S.E.2d 649 (1975), while at least one may require proof beyond a reasonable doubt. *State v. Guffey*, 253 N.C. 43, 116 S.E.2d 148 (1960). *See* Clark, "Probation and Parole in North Carolina," 13

imposed as the United States Supreme Court said in *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972), "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole [probation] restrictions."

## III.

Finally we turn to a consideration of the probation revocation *sub judice.* While counsel for the relator had no opportunity to review the transcript of the revocation proceeding since it was not provided until a day before the oral argument, we have considered the testimony at the hearing and we conclude that relator was shown to be guilty of unlawfully injuring and defacing personal property by a clear preponderance of the evidence.

For the foregoing reasons the writ of habeas corpus prayed for is denied.

*Writ denied.*

Wake Forest L. Rev. 5 (1977) and Note, "Does Due Process Require Clear and Convincing Proof Before Life's Liberties May Be Lost?" 24 Emory L. J. 105 (1975).