**Lee HARRIS, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 90–CF–405, 90–CF–449.**

District of Columbia Court of Appeals.

Argued March 5, 1992.
Decided July 10, 1992.

---

**3.** *Terry, supra,* 392 U.S. at 21–22, 88 S.Ct. at 1880

(citation omitted).

G. Jack King, Jr., appointed by the court, for appellant. Neil H. Jaffee, appointed by the court, was on the brief.

Leslie Ann Wise, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., N. Paul Patterson, Roy W. McLeese III, and John R. Fisher, Asst. U.S. Attys., were on the brief, for appellee.

Before FERREN, SCHWELB and KING, Associate Judges.

KING, Associate Judge:

Appellant seeks reversal of the trial judge's decision to revoke his probation.[1] He contends that the trial judge erred by (1) relying solely on hearsay evidence that he violated conditions of his probation, (2) applying the wrong standard of proof, (3) relying upon insufficient evidence, and (4) conducting the revocation hearing while he still faced the possibility of being prosecuted for committing a new criminal offense while on probation. We affirm.

**I.**

Pursuant to an agreement with the government, appellant entered pleas of guilty to armed manslaughter and robbery. For armed manslaughter appellant was sentenced to a term of fifteen years to life with all but seven years suspended and five years probation. For robbery appellant was sentenced to a term of five to fifteen years suspended and five years probation. The sentences were imposed consecutively as to imprisonment and concurrently as to probation. As conditions of probation the trial judge specifically ordered appellant to refrain from using illegal drugs and involving himself in criminal activity.[2]

Appellant was released on probation on July 25, 1988, approximately three years and seven months after his initial sentencing. Within four months of his release, the probation office reported that appellant had tested positive for illegal drug use on October 25, 1988. In response, the trial judge issued an order to show cause why appellant's probation should not be revoked. After a hearing on the order to show cause, the trial judge discharged the order and permitted appellant to remain on probation with the condition that he refrain from further drug use. The judge also imposed the condition that appellant complete a drug treatment program with the Alcohol and Drug Abuse Services Administration ("ADASA").

Within two months, the trial judge received another report disclosing that appellant failed drug tests on November 10, November 28, and December 5, 1988, and that he failed to complete the ADASA surveillance program. The trial judge then issued a second show cause order. Hearings with respect to that order were continued a number of times over the course of the next year.[3]

On October 23, 1989, appellant was arrested on a charge of armed assault with intent to kill ("AAWIK"). Appellant requested further postponement of his hearing on the drug use violation pending the disposition of the new charge. On December 14, 1989, the AAWIK charge was voluntarily dismissed by the government due to its inability to locate the complaining witness. At the government's request, the trial judge then issued a third show cause order based upon the allegation that appellant committed a new criminal offense, AAWIK, while on probation.

After evidentiary hearings held in February and March of 1990, the trial judge found that appellant had used illegal drugs and committed a new offense, both of which were violations of conditions of probation.[4] As a result, the trial judge revoked appellant's probation and sentenced him to the remaining unserved time on his sentences. This appeal followed.

---

1. D.C.Code § 24–104 (1989) authorizes the trial judge to revoke probation "when in the opinion of the court the ends of justice shall require."

2. Six months later the trial judge reduced appellant's sentence for the armed manslaughter to a term of ten to thirty years all but seven years suspended and five years' probation. The sentence for the robbery remained the same.

3. We note from the record that on at least two occasions appellant failed to appear in court for scheduled hearings on the drug use violations, and bench warrants were issued.

4. The trial judge also found that appellant failed to successfully complete the ADASA surveillance program. That failure constituted a violation of a condition imposed by the trial judge when he discharged the first show cause order. In addition, there was uncontested testimony that appellant failed to keep appointments with his probation officer, a violation which standing alone constitutes sufficient grounds for revocation of probation. *See Patterson v. United States,* 570 A.2d 1198 (D.C.1990).

## II.

Appellant contends that the trial judge erred in relying on hearsay evidence in determining whether to revoke his probation for (1) illegal drug use and (2) the commission of a new offense. For the reasons stated below, we find no error with respect to the trial judge's revocation of appellant's probation for illegal drug use. Since that violation is sufficient to allow revocation of probation, we do not reach the contentions raised by appellant with respect to the new offense.

## A.

Appellant was ordered to show cause why his probation should not be revoked for illegal drug use. At the show cause hearing, the government established that appellant had been using illegal drugs while on probation primarily by presenting the testimony of appellant's probation officer, Joann Hunter. Her testimony, which was objected to on hearsay grounds, was based upon information reported in appellant's probation file.

Hunter testified that appellant tested positive for illegal drug use on at least five occasions. Three of the positive results came from tests administered by ADASA on November 10, November 28, and December, 5, 1988. An earlier positive result came from a test administered by ADASA on October 25, 1988, and was the basis for the first show cause order. The fifth positive result came from a drug test administered by the Pretrial Services Agency on June 13, 1989, one of the dates when appellant appeared before the trial judge on the second show cause order.

A copy of the ADASA report disclosing the three positive drug tests in November and December of 1988 was also offered into evidence by the government. The trial judge, noting the report had "sufficient regularity and apparent reliability," permitted the government to rely on the report over appellant's objection on hearsay grounds.

Finally, Hunter also testified that on April 10, 1989, during a court proceeding in this case, appellant's attorney represented that appellant would be entering an inpatient drug treatment program because of his continuing drug problem. At that proceeding, the trial judge also warned appellant that he was running out of chances to deal with his drug problem. Ultimately, appellant was unable to enter that program because he began taking methadone, which made him ineligible.

## B.

At the show cause hearings, appellant did not deny using illegal drugs or offer an excuse. Instead, he chose to put the government to its burden of proof. On appeal, he contends the trial judge erred in admitting, over his objection on hearsay grounds, Hunter's testimony regarding the information contained in his probation file, including the ADASA report. He asserts that because Hunter lacked personal knowledge concerning the information reported in his file, her testimony violated his rights under the confrontation clause.

■ We observed previously that "[a] probation revocation proceeding is not a criminal prosecution; rather, it is more in the nature of an administrative hearing concerned with the probationer's rehabilitation." *Short v. United States*, 366 A.2d 781, 785 (D.C.1976) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782–785, 93 S.Ct. 1756, 1759–1760, 36 L.Ed.2d 656 (1973) (establishing minimum due process requirements for revocation of probation)). Consequently, the formal rules of evidence governing a criminal prosecution do not apply to a probation revocation proceeding. "[T]he process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (establishing minimum due process requirements for revocation of parole).[5] All that is required before admitting evidence at a

---

5. There is no constitutionally relevant distinction between revocation of probation and revocation of parole. *Gagnon, supra,* 411 U.S. at 782 n. 3, 93 S.Ct. at 1759 n. 3.

probation revocation hearing is a determination that the proffered evidence is reliable. *Thompson v. United States*, 444 A.2d 972, 974 (D.C.1982). Furthermore, the determination that the evidence is reliable satisfies the requirements of the confrontation clause. *See Patterson v. United States*, 570 A.2d 1198, 1199 footnote (D.C.1990). Thus, "reliable hearsay is admissible in probation revocation hearings," *id.* at 1199, and its admission does not violate the confrontation clause, *see id.* at 1199 footnote.

■ Hunter testified to the information reported in appellant's probation file. Probation violation reports have been equated with records admitted pursuant to the business records exception to the hearsay rule; they are "official record[s] kept in the ordinary course of business by the Probation Department." *Patterson v. United States, supra*, 570 A.2d at 1199. As such, probation violation reports bear "recognized indicia of reliability." *Id.* at 1199 (citation omitted). Accordingly, appellant's hearsay objection to testimony regarding information conveyed by the records contained in his probation file was properly overruled. *See id.* at 1199.

■ Appellant also contends that he was deprived of his right to cross-examine a witness on the reliability of the three drug tests administered in November and December of 1988 which disclosed the positive results contained in the ADASA report. Appellant made no attempt to offer any such witness himself. Rather, he asserts that the drug test results were inadmissible because the government did not produce a witness to attest to the accuracy of those three tests.[6]

■ We are not persuaded that the trial judge erred when he concluded that the government need not provide a witness who had personal knowledge of the three

positive drug tests and who could testify to the reliability of the results. Probation and parole revocation hearings are not trials; the formal rules of evidence do not apply. Consequently, evidence that would be inadmissible at trial may be admissible at a probation or parole revocation hearing. *Morrissey, supra*, 408 U.S. at 489, 92 S.Ct. at 2604. We are satisfied that in the context of a probation revocation hearing, the ADASA report qualified as sufficiently reliable *prima facie* evidence that appellant had tested positive for illegal drug use. *See Patterson, supra; see also Howard v. United States*, 473 A.2d 835, 839–840 (D.C. 1984) (chemist report admissible at trial to establish use of controlled substance); *Roy v. United States, supra* note 6.

Furthermore, appellant never denied using illegal drugs, nor did he ever claim that the test results were erroneous. On the contrary, from the beginning he acknowledged having an ongoing drug problem. He repeatedly requested continuances in order to prove to the court that he could stay drug free, and he asserted that he was attempting to obtain treatment. In sum, appellant's conduct during the months that the matter was pending was consistent with one who had continued to use illegal drugs as opposed to one who had tested false positive.

Moreover, during the course of the show cause hearing the government inquired whether the trial judge understood appellant's previous position to be an admission of illegal drug use. The trial judge responded by stating that the illegal drug use was "taken as—as admitted by [appellant] at that point in the case." Appellant's counsel responded, "there is no question that we have not contested the fact that [appellant] needed some drug treatment."

In short, when initially confronted with positive results from numerous drug tests, appellant did not challenge the accuracy of

---

**6.** We note that appellant does not contest the reliability of the positive result obtained from the drug test administered on June 13, 1989 by the Pretrial Services Agency. The Pretrial Services Agency uses the EMIT test. EMIT test results are presumptively reliable and thus generally admissible. *Jones v. United States*, 548

A.2d 35, 46 (D.C.1988). *See Roy v. United States*, 113 Daily Wash.L.Rptr. 2317, 2322–2323 (November 15, 1985) (positive results on EMIT test standing alone found sufficient to withstand a motion for judgment of acquittal on charge of contempt of court for using illegal drugs in violation of condition of pre-trial release).

the tests. Instead, he maintained for a number of months that he was in need of and that he was seeking treatment for his drug problem. Then, at his revocation hearing, he took the position that the government had failed to prove by competent evidence that he had been using illegal drugs. The trial judge, when determining whether there was any real question as to the reliability of the drug test results, was not obligated to ignore appellant's prior conduct or statements which were entirely consistent with his continued use of illegal drugs while on probation. *Cf. Powell v. United States,* 414 A.2d 530, 533 (D.C. 1980) (exception to hearsay rule for prior statements that are inconsistent with a party's position at trial). Accordingly, we are persuaded the trial judge did not err when he concluded the evidence of appellant's use of illegal drugs was reliable without requiring testimony regarding the accuracy of the drug tests administered by ADASA.

### III.

Appellant also contends the trial judge applied the wrong standard of proof to determine whether he violated a condition of his probation. The decision whether to revoke probation involves a two step inquiry: (1) determining whether a violation has occurred, and if so, (2) determining what action, if any, should be taken as a result. *Saunders v. United States,* 508 A.2d 92, 95 (D.C.1986) (citations omitted); *see Black v. Romano,* 471 U.S. 606, 611,

105 S.Ct. 2254, 2257–58, 85 L.Ed.2d 636 (1985). The first determination is essentially a factual one. *Id.* at 95; *see Resper v. United States,* 527 A.2d 1257, 1261 (D.C. 1987). The second determination is one committed to the sound discretion of the trial judge. *Saunders, supra,* 508 A.2d at 95. The question of the proper standard of proof, therefore, applies only to the first determination.

The trial judge concluded that he was "reasonably satisfied" appellant had violated two conditions of his probation. He noted that the standard of reasonable satisfaction as applied by him "would be placed on a scale somewhere between a preponderance and clear and convincing."

The parties agree that this jurisdiction lacks clear authoritative guidance with respect to the appropriate standard of proof for probation revocation proceedings. However, as would be expected, they disagree as to the standard a trial judge should apply. Appellant contends that a violation must be demonstrated by clear and convincing evidence ("clear and convincing"). The government argues that the appropriate standard should be by preponderance of the evidence ("preponderance"). We are persuaded that preponderance is the appropriate minimum standard of proof required for establishing substantive and technical violations of probation.[7]

### A.

The Supreme Court has offered little guidance with respect to the appropriate

---

7. Practice has shown that probation violations fall into three general categories: (1) technical (*e.g.,* failing to report to the probation office, failing to keep probation office informed of a change in address, etc.); (2) substantive (*e.g.,* using illegal drugs, or failing to abide by a substantial probation condition such as drug treatment or community service); and (3) commission of a new criminal offense. The violation here was a substantive violation, and we hold that the preponderance standard applies to such violations. We see no reason, however, for not applying the same standard to technical violations as well.

In the overwhelming number of cases, probation revocation based upon the commission of a new criminal offense occurs after conviction for that offense. Thus, the issue of standard of proof does not arise. In this case, however, the government sought probation revocation even

though there had been no conviction for the new offense. In a case where probation revocation is based upon the commission of a new offense for which there is no conviction, a preponderance of the evidence standard may or may not be appropriate. *Compare State v. Palama,* 62 Haw. 159, 612 P.2d 1168 (1980) (interpreting statute as requiring commission of a new offense to be established by a conviction) *with State v. Owens,* 58 Or.App. 739, 650 P.2d 124, 127 (1982) (applying preponderance standard to establishing commission of new offense) *and Dunavin v. State,* 611 S.W.2d 91, 101 (Tex.Crim.App.1981) (same) *and People v. Pavelich,* 76 Ill.App.3d 779, 32 Ill.Dec. 255, 257, 395 N.E.2d 202, 204 (1979) (same). Since appellant's revocation was based, however, upon a substantive violation, we do not reach that question here.

standard. In *Morrissey v. Brewer* and *Gagnon v. Scarpelli*, where the Supreme Court prescribed minimum due process requirements for revocation of parole and probation, the Court made clear that "revocation ... is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply." *Morrissey, supra*, 408 U.S. at 480, 92 S.Ct. at 2600; *see Gagnon, supra*, 411 U.S. at 781, 93 S.Ct. at 1759. In establishing those minimum due process requirements, the Court did not mandate a minimum standard of proof for determining, at a final revocation hearing, whether a condition of probation has been violated.[8] Moreover, no subsequent opinion of the Supreme Court has established a minimum standard.[9] The Supreme Court, however, has indicated that proof beyond a reasonable doubt is not required. *See Gagnon, supra*, 411 U.S. 789 n. 12, 93 S.Ct. at 1763 n. 12.

This court, in previous cases addressing sufficiency of the evidence in probation revocation proceedings, reviewed the trial judge's final decision to revoke probation to determine whether that decision was supported by substantial evidence, but did not elaborate on the standard of proof required to establish a violation. *See, e.g., Saunders v. United States, supra*, 508 A.2d at 96; *Jones v. United States*, 401 A.2d 473, 478 (D.C.1979). In *Jones*, this court declined to set aside the trial court's decision to revoke probation by noting that the decision to revoke probation is "a matter of judicial discretion." *Jones, supra*, 401 A.2d at 476–477. We also observed that

the degree of proof required to support a court's decision to revoke probation is not as great as that required to sustain a conviction for the underlying offense.

*Id.* at 477. In so doing, the court relied upon three federal courts of appeals cases: *United States v. D'Amato*, 429 F.2d 1284 (3d Cir.1970); *United States v. Carrion*, 457 F.2d 808 (9th Cir.1972); and *United States v. Markovich*, 348 F.2d 238 (2d Cir. 1965). In each of those cases, the court held that a probation violation had to be established to the trial judge's reasonable satisfaction. Our research of the federal authorities reveals that every federal circuit with a reported opinion on this issue applies the reasonable satisfaction standard.[10]

Although the federal courts of appeal are in agreement as to the applicable standard of proof, they provide little guidance as to what that standard requires. However, at least two of those courts have concluded that the reasonable satisfaction standard requires less compelling proof than the preponderance standard. For example, the Seventh Circuit has held that

[t]he court need only be 'reasonably satisfied' and need not find by a preponderance of the evidence that a violation has occurred.

*United States v. Torrez–Flores*, 624 F.2d 776, 782 (7th Cir.1980) (citation omitted). Also, the Third Circuit declined to reject the reasonable satisfaction standard in fa-

---

8. The Court did hold that detaining a defendant pending the final revocation decision required a showing of probable cause to believe a violation had occurred. *Morrissey, supra*, 408 U.S. at 485, 92 S.Ct. at 1569; *Gagnon, supra*, 411 U.S. at 782, 93 S.Ct. at 1759–60. The Court further held that the final revocation hearing "must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey, supra*, 408 U.S. at 488, 92 S.Ct. at 2603.

9. In *Black v. Romano, supra*, the Court merely stated, "[t]he courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation." *Id.* 471 U.S. at 615–616, 105 S.Ct. at 2259–2260.

10. *E.g., United States v. Czajak*, 909 F.2d 20, 22 (1st Cir.1990); *United States v. Lettieri*, 910 F.2d 1067, 1068 (2d Cir.1990); *United States v. Babich*, 785 F.2d 415, 418 (3d Cir.), *cert. denied*, 479 U.S. 833, 107 S.Ct. 123, 93 L.Ed.2d 69 (1986); *United States v. Cates*, 402 F.2d 473, 474 (4th Cir.1968); *United States v. Dozier*, 707 F.2d 862, 865 (5th Cir.1983); *United States v. Miller*, 797 F.2d 336, 339 n. 4 (6th Cir.1986) (citing standard with approval); *United States v. Torrez–Flores*, 624 F.2d 776, 782 (7th Cir.1980); *Romano v. Black*, 735 F.2d 319, 321 (8th Cir.1984), *rev'd on other grounds*, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); *United States v. Guadarrama*, 742 F.2d 487, 489 (9th Cir.1984); *United States v. Taylor*, 931 F.2d 842, 848 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1191, 117 L.Ed.2d 433 (1992).

vor of "a stricter standard" of preponderance of the evidence, *United States v. Smith*, 571 F.2d 370, 372 (3d Cir.1978). Moreover, none of the courts cited defines the standard as requiring more than the preponderance standard.[11] Thus, the clear and convincing standard advocated by appellant has no support in the case law of any of the federal courts of appeal.

Although the state courts are not as uniform as the federal courts, they are nearly unanimous in rejecting the clear and convincing standard. Only two states, Minnesota [12] and Nebraska,[13] apply that standard,[14] and Nebraska mandates it by statute.[15] In contrast, a survey of the case law of the fifty states after *Morrissey* and *Gagnon* reveals that the majority of the states apply or accept the preponderance standard, that many of the remaining states require less, and that only one other state applies a standard that clearly requires more.[16] Thus, the clear and convinc-

---

**11.** In *United States v. Francischine*, 512 F.2d 827, 829 (5th Cir.), *cert. denied*, 423 U.S. 931, 96 S.Ct. 284, 46 L.Ed.2d 261 (1975), the Fifth Circuit held that substantial evidence is not required.

**12.** *State v. Ehmle*, 400 N.W.2d 839 (Minn.Ct. App.1987).

**13.** *State v. Finnegan*, 232 Neb. 75, 439 N.W.2d 496 (1989).

**14.** Appellant's reliance on *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975), for the proposition that California requires proof by clear and convincing evidence is misplaced. In *People v. Rodriguez*, 51 Cal.3d 437, 272 Cal.Rptr. 613, 617, 795 P.2d 783, 787 (1990), the court held that the language upon which appellant relies is dicta, *id.* 272 Cal.Rptr. at 617, 795 P.2d at 787, and that the minimum standard of proof is preponderance of the evidence, *id.* 272 Cal.Rptr. at 619, 795 P.2d at 789. Accordingly, California applies the preponderance standard.

**15.** Neb.Rev.Stat. § 29–2267 (1985).

**16.** Twenty-five states apply the preponderance standard: Alaska, Arizona, Arkansas, California, Colorado, Florida, Illinois, Indiana, Iowa, Kansas, Kentucky, Maine, Maryland, Michigan, Missouri, New Hampshire, New Jersey, New York, North Dakota, Oklahoma, Oregon, Pennsylvania, Texas, Utah, and Vermont. *Rich v. State*, 640 P.2d 159, 163 (Alaska Ct.App.1982); *State v. Gerlaugh*, 134 Ariz. 164, 654 P.2d 800, 807 (1982); *Baldridge v. State*, 31 Ark.App. 114, 789 S.W.2d 735, 739 (1990); *People v. Rodriguez*, 51 Cal.3d 437, 272 Cal.Rptr. 613, 619, 795 P.2d 783, 789 (1990); *Adair v. People*, 651 P.2d 389, 391 (Colo.1982); *Johnson v. State*, 561 So.2d 1254, 1255 (Fla.Dist.Ct.App.1990) (greater weight of the evidence); *People v. Strickland*, 211 Ill. App.3d 183, 155 Ill.Dec. 591, 595, 569 N.E.2d 1202, 1206 (1991); *Justice v. State*, 550 N.E.2d 809, 810 (Ind.Ct.App.1990); *Calvert v. State*, 310 N.W.2d 185, 187 (Iowa), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982); *State v. Carter*, 5 Kan.App.2d 201, 614 P.2d 1007, 1012 (1980); *Radson v. Commonwealth*, 701 S.W.2d

716, 719 (Ky.Ct.App.1986); *State v. LaCasce*, 512 A.2d 312, 316 (Me.1986); *Wink v. State*, 317 Md. 330, 563 A.2d 414, 415 (1989) (holding that "reasonable satisfaction standard is the preponderance of the evidence standard"); *People v. Ison*, 132 Mich.App. 61, 346 N.W.2d 894, 897 (1984); *Turner v. State*, 784 S.W.2d 342, 344 (Mo.Ct.App. 1990); *State v. Field*, 132 N.H. 760, 571 A.2d 1276, 1280 (1990); *State v. Reyes*, 207 N.J.Super. 126, 504 A.2d 43, 48 (App.Div.), *cert. denied*, 103 N.J. 499, 511 A.2d 671 (1986); *People v. Neuroth*, 172 A.D.2d 886, 568 N.Y.S.2d 837, 838 (1991), *appeal denied*, 78 N.Y.2d 956, 573 N.Y.S.2d 652, 578 N.E.2d 450 (1991); *State v. Altringer*, 388 N.W.2d 864, 865 (N.D.1986); *McCaskey v. State*, 781 P.2d 836, 837 (Okla.Crim.App.1989); *State v. Owens*, 58 Or.App. 739, 650 P.2d 124, 127 (1982); *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371, 1373 n. 2 (1983); *Forrest v. State*, 805 S.W.2d 462, 464 n. 2 (Tex.Crim.App.1991); *State v. Archuleta*, 812 P.2d 80, 82–83 (Ut.1991); *State v. Millard*, 149 Vt. 384, 543 A.2d 700, 701 (1988).

Two states, Idaho and Massachusetts, have accepted the preponderance standard. *State v. Roy*, 113 Idaho 388, 390, 744 P.2d 116, 118 (Ct.App.1987) (parties agreed that preponderance standard applied and court declined to consider different standard); *Petition of Brown*, 395 Mass. 1006, 480 N.E.2d 301, 302 (1985) (concluding that "sufficient evidence" was presented to warrant revocation where trial court found that state "sustained its burden of establishing [a violation] by a fair preponderance of the evidence").

The remaining twenty-two states either apply another standard or have not clearly established a standard in a published opinion that we have found. However, of those, only one state, West Virginia, applies a standard that is defined as requiring more than the preponderance standard. *Sigman v. Whyte*, 165 W.Va. 356, 268 S.E.2d 603, 607 (1980) (clear preponderance of the evidence).

Eight states apply the reasonable satisfaction standard: Alabama, Connecticut, Delaware, Montana, Nevada, Rhode Island, South Dakota, and Washington. *Longmire v. State*, 575 So.2d 1229, 1230 (Ala.Crim.App.1990); *Payne v. Rob-*

ing standard has virtually no support in the case law of the fifty states either.

### B.

■ As we have noted, the government requests that we adopt the preponderance standard rather than the clear and convincing standard. We agree with the government for three reasons. First, as we have shown, the overwhelming weight of authority does not support application of the clear and convincing standard. On the other hand, there is substantial authority in support of the preponderance standard. More than half of the states have held that the preponderance standard is the appropriate one to apply. In addition, a substantial number of the remaining states and all of the federal courts of appeal apply a standard that requires less proof than the preponderance standard.

Second, our statute authorizing revocation of probation for adult probationers neither expressly nor implicitly prescribes a standard of proof.[17] In addition, the legislative history offers no insight as to what standard of proof the legislature would have a trial judge apply. However, for juvenile proceedings, the legislature has expressly provided that probation may be revoked upon the "establishment of facts alleged by a preponderance of the evidence." D.C.Code § 16–2327 (1989). We are aware, of course, that the law frequently treats juvenile and adult matters differently. Nevertheless, we see no reason for doing so in probation revocation matters, and in the absence of any expression of legislative intent to the contrary, we are persuaded that adopting the preponderance standard would not violate any expressed public policy.

Third, the probationer's liberty interest in avoiding incarceration, like that of the parolee, is constitutionally significant. *Morrissey, supra,* 408 U.S. at 480, 92 S.Ct. at 2599–2600; *Gagnon, supra,* 411 U.S. at 782, 93 S.Ct. at 1759–60. As the Supreme

*inson,* 10 Conn.App. 395, 523 A.2d 917 (1987) (stating "all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation" and citing Eighth Circuit case which applied reasonable satisfaction standard), *aff'd,* 541 A.2d 504 (Conn.), *cert. denied,* 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 230 (1988); *Brown v. State,* 249 A.2d 269, 272 (Del.1968) (decided before *Gagnon* ); *State v. Robinson,* 190 Mont. 145, 619 P.2d 813, 815 (1980); *Lewis v. State,* 90 Nev. 436, 529 P.2d 796, 797 (1974); *State v. Bourdeau,* 448 A.2d 1247, 1248 (R.I. 1982); *State v. Bailey,* 464 N.W.2d 626, 628 (S.D.1991); *State v. Kuhn,* 81 Wash.2d 648, 503 P.2d 1061, 1062 (1972) (decided before *Gagnon* ).

Three states apply what they define as a substantial evidence standard of review to the *final decision* whether to revoke probation: North Carolina, Ohio, and Wisconsin. However, only North Carolina has explicitly applied the standard to the determination of whether condition of probation has been violated. *State v. Cunningham,* 63 N.C.App. 470, 305 S.E.2d 193, 196 (1983) (that which has "sufficient probative force to generate in the minds of reasonable men the conclusion that the defendant [violated his probation]"); *State v. Mingua,* 42 Ohio App.2d 35, 327 N.E.2d 791, 795 (1974) (that of a "substantial nature" to justify revocation); *State ex rel. Cox v. Dep't of Health & Social Servs.,* 105 Wis.2d 378, 314 N.W.2d 148, 150 (Ct.App.1981) (substantial evidence supported agency's decision to revoke probation).

The ten remaining states either apply yet another standard or have not clearly established a standard in a published opinion that we could readily locate. *State v. Brinson,* 248 Ga. 380, 283 S.E.2d 463, 465 (1981) ("slight evidence" rule); *State v. Palama,* 62 Haw. 159, 612 P.2d 1168 (1980) (statute permits court to revoke probation "if satisfied that the defendant has inexcusably failed to comply with a substantial requirement [of probation,]" but requires proof of conviction to revoke for commission of new offense); *State v. Sutton,* 494 So.2d 1371, 1371 (La.Ct.App.1986) (evidence supported exercise of discretion); *Ray v. State,* 229 So.2d 579, 581 (Miss.1969) ("sufficient to convince the court") (decided before *Gagnon* ); *State v. Parsons,* 104 N.M. 123, 127, 717 P.2d 99, 103 (Ct.App.1986) (reasonable certainty); *Roberts v. State,* 584 S.W.2d 242, 243 (Tenn.Crim.App.1979) (finding that a violation occurred "will not be overturned unless the evidence preponderates against [it]"); *Davis v. Commonwealth,* 12 Va. App. 81, 402 S.E.2d 684, 687 (1991) ("court's findings of fact and judgment will not be reversed unless there is a clear abuse of discretion"); *Swackhammer v. State,* 808 P.2d 219, 224 (Wyo.1991) (enough to satisfy the court's conscientious judgment).

South Carolina has no published opinion squarely addressing the issue.

17. The statute, originally enacted in 1910, was modified only once, in 1983, for reasons unrelated to the standard of proof. *See* D.C.Code § 24–104 (1989) (setting forth history of provision).

Court stated, "[i]mplicit in the system's concern with parole violations is the notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." *Morrissey, supra,* 408 U.S. at 479, 92 S.Ct. at 2599. The court, therefore, must "insure that his liberty is not unjustifiably taken away." *Gagnon, supra,* 411 U.S. at 785, 93 S.Ct. at 1761. However, the probationer's liberty interest is a conditional one and thus does not entitle him to the same degree of due process otherwise afforded a citizen.

> Confinement of a probation violator is based upon commission of the criminal offense which the [government] was required to prove beyond a reasonable doubt. Probation rather than incarceration at the time of conviction is a matter of grace which may be withdrawn when the violator is shown, [by a preponderance of evidence] not to have honored the conditions made known at the time probation was granted.

*Wink v. State,* 317 Md. 330, 563 A.2d 414, 420 (1989). Moreover, the government's interest is not confined to "unnecessarily interrupting a successful effort at rehabilitation." The government also has an important interest in not "imprudently prejudicing the safety of the community." *Gagnon, supra,* 411 U.S. at 785, 93 S.Ct. at 1761. We conclude that the application of the preponderance standard achieves the required "final evaluation of any contested relevant facts"[18] and most appropriately protects the interests of both the government and the probationer.[19]

Accordingly, for the reasons stated, we hold that the standard of proof required to establish a substantive violation of probation is preponderance of the evidence.[20] As we explain in part IV, we do not reach the issue whether the preponderance standard also applies for a violation based upon the commission of a new offense. In this case, the trial judge applied a standard that required more than a preponderance of the evidence. Appellant, therefore, cannot now complain because the trial judge applied a standard requiring the government to make a stronger showing than necessary.[21]

## IV.

■ With respect to the evidence presented regarding the new offense, appellant makes the same three arguments previously addressed with respect to the illegal drug use. Specifically, he contends the trial judge improperly admitted hearsay evidence, applied the wrong standard of proof, and based the finding that he committed the offense on insufficient evidence. Appellant also contends that the trial judge erred in conducting a hearing to determine whether he committed a new offense while he still faced the possibility of being tried for committing that offense.[22] We do not consider appellant's claims of error with respect to the new offense because we are

---

**18.** *Morrissey, supra,* 408 U.S. at 488, 92 S.Ct. at 2603–04.

**19.** In addition, we note that requiring too high a standard may have the effect of dissuading trial judges from placing individuals on probation in the first place.

**20.** As noted previously, we would apply the preponderance standard to technical violations as well. See note 7, *supra.*

**21.** Appellant's contention that there was insufficient evidence to prove that he violated his probation by using illegal drugs is meritless. The trial judge stated that "based upon the totality of the circumstances, the Court is reasonably satisfied, really without any—without any tinge of doubt about the matter, that [appellant] violated his probation by the use of illegal controlled substances." Our review of the record

and the evidence presented during the course of the hearings satisfies us that there was indeed overwhelming evidence to support the finding that appellant violated a condition of his probation by using illegal controlled substances.

**22.** The government requested dismissal of the charge for the new offense because it was unable to locate the complaining witness. It reserved the right, however, to refile the case in the event it was able to find the complaining witness. Under these circumstances, appellant asserts, the trial judge was required to postpone his revocation hearing until there had been a final disposition of the AAWIK charge or until the government informed the court that it had abandoned the prosecution. *See* Super.Ct.Crim.R. 32.1(a)(3).

satisfied, as we have already stated, that there was an adequate basis for the trial court to conclude that appellant violated his probation by using illegal drugs. That finding alone was sufficient to permit the trial judge to proceed to the next step.

Our dissenting colleague ostensibly acknowledges that probation revocation is a two-step process, but misidentifies the steps. The first step, which consists of fact-finding, is to determine whether the defendant has violated the terms of his probation. If the answer is yes, then the second (discretionary) step is to determine what should be done about the fact that the defendant has violated his probation—in other words, what (if any) sanction should be imposed.[23]

In this case, the trial judge found two "first-step" violations: the commission of the new offense and the renewed drug use. Even if the new offense evidence is not considered, the finding of a second violation—unlawful drug use—was made by the judge. That finding was not a part of the second, discretionary step, but rather a part of the fact-finding first step. By noting that the trial judge has made this finding, we are not, as Judge Ferren suggests, substituting our discretion for the trial judge's. Rather, we are noting a historical fact—the trial judge has found that appellant violated his probation by using illegal drugs.

 Once it is understood that a finding of probation violation has been made, all that remains is the second, discretionary step. As we will now demonstrate, there is no question that the trial judge properly considered for sentencing purposes the hearsay testimony regarding the commission of the new offense. *See Johnson v. United States*, 508 A.2d 910, 911 (D.C. 1985).

The law has long been settled that the rules of evidence applicable at trial do not restrict a trial judge when considering information for purposes of determining an appropriate sentence. Nearly half a centu-

ry ago, the Supreme Court concluded that "[t]he due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the world of trial procedure." *Williams v. New York*, 337 U.S. 241, 251, 69 S.Ct. 1079, 1085, 93 L.Ed. 1337 (1949).

> Highly relevant—if not essential—to [a sentencing judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied the opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Id.* at 247, 69 S.Ct. at 1083. "[M]ost of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in court by witnesses subject to cross-examination." *Id.* at 250, 69 S.Ct. at 1084. Accordingly, in determining what sentence to impose, the trial judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to kind of information he may consider, or the source from which it came." *United States v. Tucker*, 404 U.S. 443, 446, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *Roberts v. United States*, 445 U.S. 552, 556, 100 S.Ct. 1358, 1362, 63 L.Ed.2d 622 (1980).

Notwithstanding the very broad discretion afforded the trial judge in conducting a sentencing proceeding, the judge's discretion has limitations. The trial judge "may not rely on mistaken information or baseless assumptions." *United States v. Hamid*, 531 A.2d 628, 644 (D.C.1987) (citations omitted); *see Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Rather, as this court has held, the sentencing judge may rely on any *reliable* evidence. *Williams v. United States*, 427 A.2d 901, 904 (D.C.1980) (emphasis added).

---

**23.** Judge Ferren seems to point to an intermediate sub-step, namely to determine whether probation should be "revoked." Logically, however, that sub-step is just a different phrasing of the second, discretionary sanction step.

In *Powers v. United States*, 588 A.2d 1166 (D.C.1991), we held that the trial judge could properly rely upon a prosecutor's proffer that the defendant had committed an uncharged robbery because the proffer was " 'supported by sufficiently reliable information.' " *Id.* at 1172 (citation omitted). In reaching that conclusion, this court noted that there were inherent similarities between the uncharged robbery and the three robbery charges to which Powers pleaded guilty. *Id.* at 1171. We also noted that Powers did not show "that the government's proffer regarding the [uncharged robbery] was altogether lacking in reliability, *i.e.*, was misinformation or a baseless assumption." *Id.* at 1171.

In this case, a police officer testified that both the complaining witness and an eyewitness identified appellant from a photo array as the man who shot the complaining witness while he was using a pay phone. The officer also testified that each witness related essentially the same facts concerning the events of the shooting. Therefore, as in *Powers*, we cannot conclude that the evidence presented by the government to establish that appellant committed a new offense was baseless. While it is true that appellant disputed the allegation by offering evidence to rebut the testimony presented by the police officer, that did not render the government's evidence unreliable.[24] We conclude that the government's evidence was sufficiently reliable to merit consideration by the trial judge for the purposes of deciding whether to revoke appellant's probation and to impose an appropriate sentence.[25]

Judge Ferren would "remand the case for a new probation revocation hearing and a new exercise of discretion." Such a remand would serve no purpose. Once the case was returned to him, the trial judge would undoubtedly recognize that he has already found that appellant violated probation. So far as the "exercise of discretion" is concerned, the trial judge would be aware that he could consider, for sentencing purposes, the hearsay evidence that appellant committed the new offense. The exercise of discretion that Judge Ferren would have the trial judge undertake on remand would therefore be identical to the exercise which he previously undertook when he initially ordered appellant to serve the suspended portion of his previously imposed sentence. As we recently reiterated, we will not order a remand to require a trial judge to perform for symbolic purposes an essentially futile act. *In re Melton*, 597 A.2d 892, 908 (D.C.1991) (en banc).

Accordingly, the judgment of the trial court is

*Affirmed.*

FERREN, Associate Judge, dissenting:

The majority ignores what the trial court *actually did* in revoking appellant's probation and, instead, reviews what the trial court *could have done* in the exercise of its discretion. By taking this erroneous analytic shortcut, which leads to easy affirmance, the majority avoids reaching the primary—and dispositive—issue appellant raises: whether the trial court violated appellant's constitutional rights by admitting a police officer's hearsay testimony without first making the required finding of "good cause" for not allowing appellant the opportunity to confront and cross-examine the declarants whose statements the officer reported (the complainant and a government eyewitness to appellant's alleged armed assault). I believe that appellant is correct; the trial court violated his due process right, as a probationer, to confront and cross-examine adverse witnesses, *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973);

---

**24.** The court in *Powers* also held that "where the defendant disputes the allegation, the trial judge is not required to hold an evidentiary hearing to determine, by application of a preponderance of the evidence or any other evidentiary standard, whether the defendant is guilty of the uncharged crime." *Powers, supra,* 588 A.2d at 1172.

**25.** The trial judge was also free to consider the fact that appellant failed to appear on at least two occasions for scheduled hearings, that he failed to meet with his probation officer as required, and that he failed to complete successfully the drug treatment and surveillance program ordered by the trial judge when the judge discharged the first show cause order.

Super.Ct.Crim.R. 32.1(a)(2)(D). I therefore would reverse and remand for a new probation revocation hearing. Respectfully, I dissent.

## I.

As the majority recognizes, *ante* at 203, probation revocation consists of two distinct steps: (1) after a final hearing, the trial court first must find whether the probationer has violated a condition of probation;[1] (2) if the court finds a violation, it may then revoke probation or take any other appropriate action in the exercise of its discretion. *See Resper v. United States*, 527 A.2d 1257, 1260 (D.C.1987); *Saunders v. United States*, 508 A.2d 92, 95 (D.C.1986); *see also Black v. Romano*, 471 U.S. 606, 611, 105 S.Ct. 2254, 2257–58, 85 L.Ed.2d 636, *reh'g denied*, 473 U.S. 921, 105 S.Ct. 3548, 87 L.Ed.2d 671 (1985). The first step, therefore, is not discretionary; in conducting the required hearing, the trial court must accord a probationer the minimal due process protections mandated by *Gagnon*, 411 U.S. at 786, 93 S.Ct. at 1761–62, and *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484

(1972). The second step, however, is discretionary, and we will reverse for abuse of discretion only if (for example) the "trial court's action was [not] within the range of permissible alternatives," *Johnson v. United States*, 398 A.2d 354, 365 (D.C.1979), and, even then, only if "the error in the discretionary determination jeopardized the fairness of the proceeding as a whole," or "the error had a possibly substantial impact upon the outcome," *id.* at 366.

The trial judge first found, by more than a preponderance of the evidence,[2] that appellant (1) had used illegal drugs, thereby violating one substantive condition of his probation,[3] and (2) had committed a crime, thereby violating the other substantive condition of his probation. The trial court then exercised its discretion—based on those *two* findings—and revoked appellant's probation. Contrary to the majority's creative reading, the judge did not purport to exercise his discretion to revoke probation based solely on the (step one) factual finding of illegal drug use and, thus, to reserve the "reliable" hearsay information about appellant's newly-committed crime exclusively for use in its (step two) revocation and resentencing decision.[4]

---

1. The trial court also must hold a preliminary hearing to determine "whether there is probable cause or reasonable ground to believe that the arrested [probationer] has committed acts which would constitute a violation of [probation] conditions." *Morrissey v. Brewer*, 408 U.S. 471, 485–86, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1971); *see Smith v. United States*, 454 A.2d 1354, 1355 n. 1 (D.C.1983); Super.Ct.Crim.R. 32.1(a)(1) (listing due process requirements at preliminary revocation hearing).

2. I join the section of Part III of the majority opinion, adopting the preponderance standard as the evidentiary burden the government must meet to prove "technical" or "substantive" violations of probation. Contrary to the majority, however, I believe this court cannot properly avoid reviewing the trial court's finding that appellant committed a new criminal offense while on probation. It follows that this court should answer the question left open by the majority: should the "preponderance" or the "clear and convincing evidence" standard apply when the issue at a probation revocation hearing is whether the probationer has committed a crime while on probation? *See ante* note 7. Because I dissent on other grounds, however, I also do not address that question.

3. I am not persuaded by the analysis in Part II.B. of the majority opinion, which concludes that the probation officer's testimony, on which the trial judge relied to find appellant had used illegal drugs, was "reliable hearsay." The probation officer's testimony referred primarily to the ADASA form, not to the drug tests themselves. Furthermore, the government moved neither the probation file nor any official lab test results into evidence. Only the ADASA form, a kind of summary, was admitted. Thus, this case is not the same as *Patterson v. United States*, 570 A.2d 1198 (D.C.1990), where the probation officer testified using a probation violation report that was "an official record kept in the ordinary course of business." *Id.* at 1199. Such official records typically include indicia of reliability such as signatures. While an official, signed report or a signed lab test would meet the requirements of "reliable hearsay" under *Patterson*, I do not think the ADASA form, standing alone, does.

4. Thus, the majority's assertion and premise that "appellant's revocation was based ... upon a substantive violation," *ante* note 7, is simply false. The trial court based its (step two) revocation of probation upon finding *both* a substantive violation (use of illegal drugs) *and* the commission of a new offense. The majority belated-

The fact is, the trial court considered both the *fact* of drug use and the *fact* of the new crime as part of its step one "violation" analysis; the new crime evidence was not used solely as part of the court's step two "revocation resentencing" analysis. Put another way, in the trial court's analysis, both the drug use and the new crime—taken together—were essential to a (step one) finding of probation violation sufficient to trigger a (step two) discretionary imposition of sanction. As a consequence, evidence of the new crime, as well as the drug use, were also available for the trial court to consider when making its sanction decision; but by using the new crime evidence as essential to the (step one) violation finding, the court necessarily had to assure that the finding based on that evidence resulted from the constitutional process required for step one findings.

More specifically, as elaborated below, the majority was required to consider whether the admission of evidence of appellant's alleged new crime met due process hearing requirements both as to confrontation rights and as to the required burden of proof—two due process inquiries the majority ignores. Instead, by erroneously construing what the trial court did, the majority, in Part IV of its opinion, addresses an issue not really joined in this case: the trial court's ability to consider hearsay evidence of appellant's commission of another crime when considering (step two) resentencing alternatives. That issue, however, was not even briefed or argued.

In sum, the majority conveniently disregards one of the two probation violation findings the trial court found essential in deciding whether to exercise its discretion to impose a sanction by revoking probation. Indeed, the finding the majority ignores—that appellant had committed a violent offense—was clearly the primary reason the

trial court decided to revoke appellant's probation because, as the trial court stated, his "continued presence in the community ... would not be in the best interests of the community." By assuming that the trial court decided to revoke probation (or would have revoked probation) solely on the basis of appellant's drug use, the majority erroneously substitutes its own exercise of discretion for that of the trial court.

To be clear: when I say the majority improperly substituted its discretion for that of the trial judge, I am not saying that my colleagues have improperly "not[ed the] historical fact" that the trial judge made a finding of unlawful drug use. *Ante* at 208. Rather, they improperly say, in effect, that probation could have been revoked—and therefore we are going to deem it as having been revoked—based on that finding alone. In doing so the majority fails to note another "historical fact": the trial court did not revoke probation—in *its* discretion—merely because of the finding of unlawful drug use. Rather, for all we can tell, the court decided to impose the ultimate revocation sanction, instead of a lesser one, because it found as part of its (step one) violation analysis both that appellant had committed an armed assault and that appellant had used illegal drugs.

The invalid consequence of the majority's mistaken analysis is that it allows the majority to shift the troublesome hearsay evidence of the alleged new crime from the step one violation phase to the step two discretionary sanction phase of the analysis where the majority can dispense with constitutional concerns like due process. That will not do. In the sections that follow, I will outline the facts most relevant to this appeal, discuss the due process requirements applicable to probation revocation,

---

ly recognizes this obvious fact on page 208 of its opinion, where it acknowledges "the trial judge found two 'first step' violations: the commission of the new offense and the renewed drug use." And yet back on page 201, the majority had already foreclosed meaningful analysis of appellant's constitutional claim challenging the trial court's finding that appellant committed armed assault, by stating: "Since [the illegal drug use]

is sufficient to allow revocation of probation, we do not reach the contentions raised by appellant with respect to the new offense." The majority, therefore, catches itself in a *non sequitur,* for if the revocation decision was based on "two 'first step' violations," not on the drug use alone, then the majority must "reach the contentions raised by appellant with respect to the new offense."

and assess the trial court's exercise of discretion.

## II.

On October 23, 1989, the government charged appellant, who was on probation at the time, with assault with intent to kill while armed. Less than two months later, the government voluntarily dropped its charge, purportedly because it was unable to locate the complaining witness, Michael London. At the probation revocation hearing, a doctor testified that, on October 10, 1989, while on duty at D.C. General Hospital, she had treated London for a superficial scalp wound and two gunshot wounds to the abdomen. Detective George Taylor testified regarding his interviews with London and Charese Drake, the government's other eyewitness, including their respective identifications of appellant as the shooter. Roscoe Jackson was the only eyewitness to the shooting who testified at the hearing. He stated that he had witnessed the entire shooting incident and that appellant was not the shooter. Furthermore, Jackson testified that at the time of the shooting, Drake was standing next to him on the stairway of the building in which they both lived. Appellant testified that at the relevant time he had been at the home of Rhonda McCord helping her take care of their sick son. McCord corroborated appellant's story. Appellant also said that he and government witness Drake had once been romantically involved and that, after their breakup, Drake had made inappropriate comments to a girlfriend of his.

Neither the complaining witness, Michael London, nor the government's eyewitness, Charese Drake, testified at the hearing. The government failed to produce London, and although Drake was present and was called as a government witness, she told the court that she did not want to testify, and the prosecutor stated that he did not think she could testify at that time.[5] Over appellant's objection, the trial court permitted the government to attempt to prove the probation violation (commission of a new offense) through the hearsay testimony of

Detective Taylor. At the conclusion of the hearing, the trial court stated that it was "reasonably satisfied" that appellant had shot London.

## III.

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black*, 471 U.S. at 610, 105 S.Ct. at 2257 (citing *Bearden v. Georgia*, 461 U.S. 660, 666 & n. 7, 103 S.Ct. 2064, 2069 & n. 7, 76 L.Ed.2d 221 (1983)). In making its finding that appellant had committed a new crime while on probation, the trial court clearly violated appellant's due process rights. In *Gagnon*, the Supreme Court stated that a probationer has the constitutional right to confront and cross-examine adverse witnesses "unless the hearing officer specifically finds good cause for not allowing confrontation." 411 U.S. at 786, 93 S.Ct. at 1762; *see* Super.Ct.Crim.R. 32.1(a)(2)(D). The trial court failed to make any finding on the record that there was "good cause" excusing the government's failure to produce eyewitness testimony. Without a government showing and a trial court finding of good cause, the court violated appellant's constitutional right to confrontation when it relied on Detective Taylor's hearsay testimony about the incriminating identifications and statements by two eyewitnesses in lieu of testimony from those witnesses.

The trial court should have required the government, on the record, to show "good cause" why London was not available to testify and why Drake did not want to testify even though she was present at the hearing. Only after such a showing could the trial court balance "the probationer's right to confrontation against the Government's good cause for denying it." *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir.1987). Although there are no "fixed rules on what [constitutes] good cause in every case[,] [a]s the Supreme Court noted in *Gagnon*, 'in some cases there is simply

5. Although the prosecutor indicated he was going to recall Drake, he never did so.

no adequate alternative to live testimony.' " *United States v. Penn,* 721 F.2d 762, 765 (11th Cir.1983) (quoting *Gagnon,* 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5)).

The Superior Court has outlined the procedures it should follow at a probation revocation hearing when the government wants to introduce hearsay testimony of police officers (or others) rather than testimony of declarant-witnesses. *See United States v. Peters,* Crim. No. 9956–75 (D.C.Super.Ct. Dec. 12, 1975) (opinion of then Chief Judge Harold H. Greene), *incorporated by appendix in In re A.W.,* 353 A.2d 686, 688–96 (D.C.1976) (Nebeker, J., concurring in per curiam).

Since the probationer's right to confront and cross-examine adverse witnesses is constitutionally mandated (408 U.S. at 489, 92 S.Ct. 2593 [at 2604]), the standard of "good cause" for denial of this right, referred to in both the *Morrissey* and *Gagnon* decisions, would only be met where the government presents specific facts, such as threats by the probationer to other witnesses, which show that a confrontation would present a clear danger to the witness. The fact that the witness will also testify at the probationer's criminal trial could not, alone, justify a denial of the probationer's constitutional rights to confront his accuser. As Mr. Justice Brennan, concurring in *Morrissey, supra,* (408 U.S. at 491, 92 S.Ct. 2593 at 2605) stated, "For each hearing the [probationer] is entitled to ... confront and cross-examine adverse witnesses, unless it is specifically found that a witness would thereby be exposed to a significant risk of harm."

Whenever the Court determines that a witness would be subjected to such undue and unusual danger that the probationer may not confront and cross-examine him [or her], it should hear that witness' testimony *in camera,* and make an independent determination on the record as to the relative reliability of the informant's statement and those of the probationer and his [or her] witnesses (*Birzon v. King,* 469 F.2d 1241, 1244–45 (2d Cir. 1972), as well as of the weight to be given to the statements of the informant.

*Id.* at 695 (appendix; text of *United States v. Peters); see also Smith, supra* note 1, 454 A.2d at 1355 n. 1 (noting this court's approval of *Peters'* procedural requirements).

According to the *Peters* procedures, if the trial court had found good cause to excuse Drake's in-court testimony, it then should have heard Drake's testimony *in camera* before making credibility and reliability findings on the record. Likewise, the court should have dealt with London's absence under the *Peters* guidelines. Before admitting Detective Taylor's hearsay testimony, the court should have required the government to show good cause for denying appellant the opportunity to confront and cross-examine London. Specifically, the trial court should have found on the record whether London was "unavailable" and then should have explained whether Detective Taylor's hearsay testimony was "reliable" before admitting and considering it.[6] Instead, by relying without good cause

**6.** The government is correct in pointing out that the Sixth Amendment's confrontation clause imposes a higher constitutional standard of admissibility at trial than the due process clause imposes at a probation revocation hearing. Contrary to the government's conclusion, however, that does not mean the government has no burden to overcome before offering hearsay testimony in place of testimony from declarants themselves. Because London's statement to the police and identification of appellant as the shooter incriminated appellant, I believe that due process balancing—to determine whether there is good cause for denying appellant his right to confront and cross-examine London— requires the government to proffer a sufficient explanation of London's unavailability and to show why Detective Taylor's hearsay testimony is sufficiently reliable. Without such a requirement, the government, as a matter of tactical course, may choose to put more credible police officers on the stand at probation revocation hearings instead of taking a chance with less credible eyewitnesses (subject to in-court scrutiny and cross-examination) to a probationer's alleged criminal offense. Furthermore, we have no evidentiary principle suggesting that a police officer's hearsay testimony is inherently reliable. For example,

[w]hile police reports may be demonstrably reliable evidence of the fact that an arrest was made, they are significantly less reliable evidence on whether the allegations of criminal conduct they contain are true. We note that

on Detective Taylor's account of what Drake and London had said, the trial court denied appellant his constitutional right to challenge the credibility and recollection of those who had identified him as the shooter, contrary to the testimony of a third eyewitness, the only one who testified at the hearing.

The trial court's failure to follow the *Peters* procedures thus violated appellant's due process rights and blurred the important distinction between the preliminary hearing after arrest and detention, *see supra* note 1, and the final revocation hearing. At the more informal preliminary hearing, a police officer's hearsay testimony may be enough to find *probable cause* to believe the probationer has violated a condition of probation. *See Morrissey,* 408 U.S. at 485–87, 92 S.Ct. at 2602–03; *In re A.W.,* 353 A.2d at 690–91 (appendix; text of *United States v. Peters).* The final revocation hearing, however, with its additional due process protections, "must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation." *Morrissey,* 408 U.S. at 488, 92 S.Ct. at 2603. By dispensing with the "good cause [requirement] for not allowing confrontation," *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762, the trial court required the government to do little more than it did at the probable cause hearing: the same police officer provided the same hearsay testimony. The final revocation hearing was therefore transformed into a mere formality, the repetition of hearsay testimony from the preliminary hearing, contrary to *Gagnon* and *Morrissey. See In re A.W.,* 353 A.2d at 692 (appendix; text of *United States v. Peters).*

Unfortunately, the majority does "not reach" these fundamental issues, preferring instead to focus exclusively on the theoretical sufficiency of the trial court's finding of another violation of appellant's probation, his illegal drug use. The majori-

ty then recreates the proceedings below by claiming that the trial court received evidence of the armed assault incident only as part of its discretionary ruling on revocation and sentencing. *See ante* at 207–209. As indicated above, however, that simply is not what happened. By ignoring the distinction between the final revocation hearing—circumscribed by due process procedures and protections—and the subsequent discretionary act of revocation and resentencing, the majority undermines the Supreme Court's holdings in *Gagnon* and *Morrissey.*

### IV.

When appellate judges review decisions committed to the trial judge's sound discretion, it is elementary that they must not infer either what the trial judge could have done or what he or she might do on remand. It is thus improper for my colleagues in the majority to substitute their own exercise of discretion for the trial judge's, even if they perceive an alternative, sufficient ground for revoking appellant's probation. *See Ibn–Tamas v. United States,* 407 A.2d 626, 636 n. 17 (D.C. 1979). When reviewing the trial court's exercise of discretion, "[w]ere an appellate court to substitute its own judgment, the court would rationalize a result which the trial court itself, properly informed of the law, might not have reached, given factors at [the hearing] which the appellate court could not possibly perceive." *Wright v. United States,* 508 A.2d 915, 920 (D.C. 1986).

Here, the trial court premised its discretionary revocation of appellant's probation on two findings it deemed essential to its conclusion that appellant violated his probation. One of these findings violated appellant's constitutional rights under *Gagnon* and *Morrissey.* Accordingly, the trial court's discretionary decision to revoke and resentence was erroneous: its "action was

Congress exhibited similar doubts about the reliability of [police] reports when it specifically excluded them from the public records exception in *criminal cases. See* Fed.R.Evid. 803(8)(B).

*United States v. Bell,* 785 F.2d 640, 644 (8th Cir.1986) (citation omitted).

 

[not] within the range of permissible alternatives," and it "relied upon an improper factor." *Johnson*, 398 A.2d at 365. This error, moreover, "had a possible substantial impact upon the outcome," *id.* at 366, for we cannot be certain the judge would have revoked appellant's probation solely on a constitutional finding of illegal drug use, even if the government had presented hearsay evidence of a new criminal offense at the resentencing phase. The first time appellant was before the court on a probation violation of illegal drug use, the court continued probation, rather than revoking it. The fact that the judge conditioned continued probation on refraining from further drug use does not mean the judge would *automatically* have revoked for a second slip, without regard to circumstances.[7]

"Both the probationer ... and the State have interests in the accurate finding of fact and the informed use of discretion." *Gagnon*, 411 U.S. at 785, 93 S.Ct. at 1761. Because the trial court did not follow constitutionally required procedures, it erroneously found that appellant committed an armed assault (by less than clear and convincing evidence, which may be necessary to satisfy due process, *see supra* note 2). Because the court premised its probation revocation order primarily upon that erroneous finding, it did not exercise its discretion in an "informed" manner. *Id.*

7. The trial court would have been free, in the exercise of its discretion, to leave the probation sentence undisturbed. Alternatively, it could have imposed new conditions of probation rather than revoking probation altogether. The trial court followed this latter course in this case after appellant had failed his first drug test; the court restored appellant to probation on the condition that he participate in the ADASA drug treatment program.

8. The majority postulates that the exercise of discretion I would have the trial judge undertake on remand would "be identical to the exercise which he previously undertook." *Ante* at 209. That, again, is simply wrong. I would remand for a new probation revocation hearing, including the nondiscretionary (first step) violation analysis to afford appellant his constitutional rights under *Gagnon* and *Morrissey* pursuant to the *Peters* procedures. If the government fails to meet the "good cause" requirement for

For the foregoing reasons, I vote to reverse and remand for a new final revocation hearing on the commission of the armed assault offense and for a new exercise of the trial court's discretion.[8]

dispensing with appellant's right to confront and cross-examine adverse witnesses, or if the government produces those witnesses and they fail to withstand the scrutiny of testifying in court (causing the government's failure to meet its burden, *see supra* note 2), the trial court—in discretionary step two—has authority, and may decide, not to revoke appellant's probation, despite the fact of appellant's illegal drug use and even if the government produces reliable hearsay evidence of the armed assault. It is not for this court to say what the trial court would do in the exercise of discretion on a new record.

It may be—and perhaps the majority thinks—that the trial court on remand would choose to base its (step one) violation finding solely on appellant's renewed drug use and simply save the new crime evidence exclusively for use in the (step two) sanction decision. If so, that would be another case, unlike the one before us now.