# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Zachary G.,**
**Defendant Below, Petitioner**

**vs)  No. 15-1143** (Berkeley County 12-F-172)

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**June 9, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Zachary G.[1], by counsel Paul G. Taylor, appeals his conviction for the offense third degree sexual assault. Respondent State of West Virginia, by counsel Cheryl K. Saville, filed a response. Petitioner filed a reply. With leave of this Court, petitioner filed a supplemental brief. Respondent filed a supplemental response; to which petitioner filed a supplemental reply brief.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted by the Berkeley County Grand jury for one count of third degree sexual assault of H.S. ("the victim"), a thirteen year old girl at the time of the offense, and one count of second degree sexual assault of the victim in May of 2012.

Prior to trial, petitioner moved the circuit court to order a psychological evaluation of the victim. In discovery, the State provided information to petitioner regarding an incident that occurred with the victim, in Tazewell Virginia. The victim's mother disapproved of one of her friends, and rather than tell her mother that she was with that friend, the victim told her mother that she had been kidnapped. As a result, petitioner was charged with filing a false police report. That charge was dismissed. Petitioner's counsel sought to have the victim evaluated in an attempt to determine if the victim had "a propensity and proclivity for lying," and to determine if

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.,* 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.,* 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.,* 183 W. Va. 641, 398 S.E.2d 123 (1990).

her injury in this matter was self-inflicted. The State argued that this was improper, and that credibility determinations are to be made by a jury. The circuit court agreed with the State, denied petitioner's motion, and found that the evidence was not probative on the issue of whether petitioner caused the injury on August 18, 2010.

The evidence at trial revealed that on August 18, 2010, petitioner was eighteen years of age and in a relationship with a seventeen-year-old girl, K.W. The victim was a thirteen year old girl. According to petitioner's statement, he was in the process of breaking up with K.W., and K.W. contacted him asking him to purchase cigarettes for the victim. Petitioner refused. Later, petitioner met the victim and K.W. at K.W.'s house, and K.W. told petitioner that the victim wanted to apologize. Ultimately, according to the victim, petitioner had sexual intercourse with her and K.W. After petitioner penetrated her, the victim was in pain and bleeding, and left the room while petitioner was having sex with K.W., and called her mother. The victim's mother then contacted the police who interviewed petitioner.

Petitioner gave two statements to Sergeant Snyder of the Berkeley County Sheriff's Department. On August 18, 2010, petitioner recounted the events to police, but denied having sex with the victim. Petitioner admitted to the police that he intended to have sex with K.W. and that the victim was in the room, with her shirt off, and watched. The next day, August 19, 2010, petitioner gave another statement to police, and Sgt. Snyder confronted him with evidence from the hospital that the victim suffered tears in her vagina and hymen, and that medical professionals recovered hair and DNA from the victim's body and clothing. Petitioner continued to deny that he had sexual intercourse with the victim, and requested an attorney.

Following a jury trial in July of 2013, Petitioner was convicted in the Circuit Court of Berkeley County, of the offense of third degree sexual assault. The matter was continued several times and at a sentencing hearing on February 24, 2014, the circuit court chose to defer sentencing and placed petitioner at the Anthony Correctional Center for Youthful Offenders ("Anthony Center"). Petitioner completed the program at the Anthony Center, and the circuit court sentenced him to a term of one to five years in the penitentiary. The circuit court suspended the sentence and placed petitioner on probation for a period of five years. Petitioner was also ordered to serve five years of supervised release pursuant to West Virginia Code § 62-12-26. As a condition of his sentence, petitioner was required to register as a sexual offender for life.

Following his release on probation, petitioner moved into a rescue mission shelter, however, once he registered as a sex offender, he was no longer allowed to stay in the mission due to the mission's resident guidelines. Petitioner was unable to secure a suitable residence. Because he was unable to find a suitable residence, petitioner was incarcerated at the Eastern Regional Jail until such time as he could arrange for a verifiable residence in conformity with the terms of his probation.

The parties agreed, and by orders entered on August 12, 2015, and September 4, 2015, petitioner was released from the jail during the day in order to seek employment opportunities, pursue educational opportunities, participate in community based programming and services, attend mental health treatment, and other activities approved by the circuit court. On August 18, 2015, petitioner's intensive supervision probation officer instructed petitioner to call him every

2

day of his release so that they could discuss his plans for the day. The probation officer also asked petitioner to keep a record of his employment efforts. After petitioner was released for several days, the probation officer discovered that petitioner was not making contact with him, and that petitioner had no record regarding his employment efforts. Further, petitioner reported to his probation officer that during the day he was at a "friend's house." A petition to revoke petitioner's probation was filed, and a capias was issued for petitioner's arrest.

Petitioner's probation revocation hearing was held on December 4, 2015. At the hearing, the circuit court heard evidence regarding petitioner's non-compliance with the terms of his probation. Petitioner moved for the court to allow him to live in the home of a friend. This motion was denied because the friend had small children in the home, which would be in violation of the terms of petitioner's supervised release.

On December 22, 2015, the circuit court revoked petitioner's probation, and sentenced him to a term of incarceration of not less than one nor more than five years in the penitentiary. In addition, petitioner was required to serve an additional term of five years supervised release following his incarceration pursuant to West Virginia Code § 62-12-26. The circuit court found that petitioner was not amenable to probationary control and discipline, and had not found a verifiable residence within Berkeley County. Petitioner filed a notice of appeal before this Court in November of 2015, and perfected that appeal in July of 2016.

Petitioner's term of incarceration expired on June 23, 2016, and he was placed on supervised release. Petitioner was again unable to find a residence, and the probation officer placed him at Crossroads, a shelter facility in Charleston, West Virginia. Reportedly, petitioner was belligerent and refused placement at the shelter, and reportedly stated that "he could just be taken back to jail." On July 20, 2016, petitioner's probation officer filed a petition for revocation of supervised release, alleging that petitioner did not have a verifiable residence, and that he refused the shelter option. The circuit court revoked petitioner's supervised release again, on August 19, 2016, and sentenced petitioner to serve a determinate term of five years of incarceration in the penitentiary.

Petitioner filed a motion to stay, which was denied by the circuit court. Petitioner argued that the circuit court did not have the authority to issue the revocation as this matter was still pending before the West Virginia Supreme Court. On November 7, 2016, the circuit court entered an order that stayed the imposition of sentence for petitioner's supervised release violation, and suspended petitioner's sentence of five years of incarceration. The circuit court then granted petitioner post-conviction bail under the terms of a work-release program.[2] Petitioner now appeals the December 23, 2015, and the August 19, 2016, orders of the Circuit Court of Berkeley County.

---

[2] In August of 2016, petitioner filed a motion to modify and amend the scheduling order, and this Court issued an amended scheduling order, to allow petitioner to brief issues related to his supervised release and incarceration.

On appeal petitioner alleges that the circuit court erred by (1) denying petitioner's motion for a psychological evaluation of the victim; and (2) revoking petitioner's probation and imposing sentence.[3] In his supplemental brief petitioner alleges that the circuit court (1) did not have jurisdiction to revoke his supervised release and (2) the circuit court erred in revoking his supervised release and imposing sentence due to petitioner's "willful homelessness." As an initial matter we note,

[3] Petitioner also complains as assignments of error, (1) that the circuit court erred in denying his motion to dismiss based upon the presentation of false evidence to the grand jury and cites testimony from a grand jury proceeding which petitioner asserts took place on July 22, 2013, and (2) that the circuit court erred in denying his proposed jury instructions regarding missing evidence. However, there was no July 22, 2013, grand jury proceeding reflected in the record. In fact, the July 22, 2013, pre-trial hearing took place more than one year after petitioner's indictment by the grand jury in May of 2012. The record before this Court does not contain the relevant portion of the grand jury testimony, nor does petitioner's brief properly cite to this testimony in the record. In addition, petitioner's argument regarding the proposed jury instruction simply refers this Court to the relevant portion of the trial transcript, and instructs this Court to review that transcript in order to ascertain petitioner's argument. Pursuant to Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure,

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Once again, we emphasize that, ""[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." *State, Dep't of Health & Human Res., Child Advocate Office on Behalf of Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995). Consequently, we decline to consider these assignments.

As an additional assignment of error, petitioner inexplicably argues that his statement to law enforcement was hearsay, and inadmissible. We find petitioner's argument is without merit. Pursuant to Rule 801(d)(2)(A) of the West Virginia Rules of Evidence, in relevant part, a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity." Here, petitioner is not contesting that he made the statement, or that the statement was voluntary, and the State sought to introduce the statement into evidence against him. Accordingly, petitioner's statement is not hearsay. Consequently the circuit court did not err in allowing its admission.

[i]n reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review.

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000).

Petitioner first argues that the circuit court erred in denying his motion for a psychological evaluation of the victim. Petitioner argues that pursuant to syllabus point three of *State v. Delaney*, 187 W. Va. 212, 417 S.E.2d 903 (1992), there were compelling facts that warranted this evaluation, specifically, the testimony of a nurse who indicated that the victim's injuries could have been self-inflicted. The State counters that the actual purpose of this motion was to have a psychologist impermissibly evaluate the victim's credibility.

While a defendant has a right to present evidence on his own behalf and to confront adverse witnesses, pretrial discovery is generally within the discretion of the trial court. *See* Syl. Pt. 8, *State v. Audia*, 171 W. Va. 568, 301 S.E.2d 199 (1983). Further, "the decision whether to require a psychiatric evaluation prior to determining a child's capacity to testify is within the trial court's discretion." *Delaney*, 187 W. Va. at 215, 417 S.E.2d at 906. In *Delaney*, we held that

[i]n order for a trial court to determine whether to grant a party's request for additional physical or psychological examinations, the requesting party must present the judge with evidence that he has a compelling need or reason for the additional examinations. In making the determination, the judge should consider: (1) the nature of the examination requested and the intrusiveness inherent in that examination; (2) the victim's age; (3) the resulting physical and/or emotional effects of the examination on the victim; (4) the probative value of the examination to the issue before the court; (5) the remoteness in time of the examination to the alleged criminal act; and (6) the evidence already available for the defendant's use.

Syl. Pt. 3*, id*.

It is clear from the record that the circuit court carefully considered these factors in making the determination to deny petitioner's motion. The circuit court noted that at the time the motion was filed, the victim was sixteen years old, and that while a psychological examination is not as intrusive as a physical examination, there was the potential for some emotional harm to the victim. Importantly, the circuit court found that the psychological examination would have little probative value, as the victim did not have a history of prior self-harm. The circuit court further found that the value of any evaluation would be diminished as three years had passed since the commission of the offense and the motion for evaluation. Finally, the circuit court found that petitioner had evidence in the form of the police report of the incident in Virginia, and was free to cross-examine the victim on the issue. Based upon the above, we find no abuse of discretion, and decline to reverse the circuit court's ruling.

5

Next, petitioner claims that the circuit court erred in revoking his probation and imposing sentence.[4] Petitioner argues that the circuit court improperly revoked his probation and supervised release due to his status as a homeless person. Petitioner asserts that the evidence presented at his revocation hearings revealed that he was indigent, homeless, and without the ability to be gainfully employed due to his homelessness. Petitioner argues that before one may have his probation or parole terminated or revoked, it must be demonstrated that the violation is not due to the lack of financial resources of the defendant. *See State v. Haught*, 179 W. Va. 557, 371 S.E.2d 54 (1988); *State v. Minor*, 176 W. Va. 92, 341 S.E.2d 838 (1986); and *Armistead v. Dale*, 170 W. Va. 319, 294 S.E.2d 122 (1982). Petitioner also argues that the circuit court lacked the jurisdiction to impose a five year incarceration sentence once his first appeal was filed with this Court.

We find petitioner's argument unpersuasive. We have previously held that "probation is a privilege of conditional liberty bestowed upon a criminal defendant through the grace of the circuit court. . . . Accordingly, the decision as to whether the imposition of probation is appropriate in a certain case is entirely within the circuit court's discretion." *State v. Duke*, 200 W. Va. 356, 364, 489 S.E.2d 738, 746 (1997). The record reflects that petitioner was sentenced to the Anthony Center pursuant to the Youthful Offenders Act, and upon release, was unable to live at the local homeless shelter because of his status as a registered sex offender. In an attempt to accommodate petitioner's homelessness, the circuit court granted petitioner work-release from the regional jail in order to allow petitioner the ability to secure employment, participate in community services, attend educational pursuits, and obtain mental health treatment. Rather than comply with these terms, petitioner refused to call his probation officer daily, as required, and could provide no records to show that he sought employment, leaving large gaps of his time unaccounted for, which were clear violations of the terms and conditions of probation. Pursuant to West Virginia Code § 62-12-10, in relevant part,

> "[i]f the court or judge finds reasonable cause exists to believe that the probationer: . . . [v]iolated a special condition of probation designed either to protect the public or a victim; the court or judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed and order that sentence be executed."

Accordingly, we find that under these circumstances, the circuit court did not abuse its discretion in revoking petitioner's probation.

---

[4] Petitioner also argues that under West Virginia Code § 62-12-10(a)(2), the maximum sentence he should have received for his probation revocation was sixty days. However, the circuit court found that petitioner violated three conditions of probation, and pursuant to said section, "[f]or the third violation, the judge may revoke the suspension of imposition or execution of sentence, impose sentence if none has been imposed and order that sentence be executed, with credit for time spent in confinement under this section." *Id.*, in relevant part. There is no requirement that three separate petitions be filed against a defendant. Accordingly, we find this argument lacks merit.

In petitioner's supplemental brief, he argues that the circuit court did not have jurisdiction to revoke his supervised release and sentence him to serve five years of that supervision in the penitentiary while his original appeal was pending before this Court. For support, petitioner cites syllabus point three of *Fenton v. Miller*, 182 W. Va. 731, 391 S.E.2d 744 (1990), in which this Court held that "[o]nce this Court takes jurisdiction of a matter pending before a circuit court, the circuit court is without jurisdiction to enter further orders in the matter except by specific leave of this Court."

Although in syllabus point one, in part, of *State v. Doom*, 237 W. Va. 754, 791 S.E.2d 384 (2016), this Court held that "[w]hen the Supreme Court of Appeals of West Virginia grants a petition for appeal all proceedings in the circuit court relating to the case in which the petition for appeal has been granted are stayed pending this Court's decision in the case[,]" we find petitioner's argument to be without merit. The circuit court sentenced petitioner under West Virginia Code § 62-12-26, which allows for extended supervision of certain sex offenders. Under the very narrow circumstances of this case, it is untenable that the circuit court would not retain jurisdiction to revoke the supervised release of a registered sex offender, who was unable and unwilling to provide a suitable address as required for his supervision.

Had the circuit court not acted, petitioner likely would have been released without a suitable address, in violation of the terms and conditions of his supervised release. Consequently, the circuit court retained its authority to hear matters of executing and effectuating revocations of probation or supervised release. The United States Supreme Court has drawn a distinction between the imposition of sentence, which creates a final judgment for appeal in a criminal case, and the execution of that sentence, which is "entirely apart from any re-examination of the merits of the litigation." *Berman v. U.S.*, 302 U.S. 211, 213 (1937). Unlike the motion to reduce sentence that was granted in *Doom*, the State's motion to revoke petitioner's supervised release was not a re-examination of the merits of the litigation.

At the time of the hearing on petitioner's motion for supervised release, petitioner was convicted of the offense of third offense sexual assault, and was sentenced to a term of incarceration, with an additional term of supervised release pursuant to West Virginia Code § 62-12-26. The motion to revoke supervised release did not re-submit the question of the suitability of petitioner for probation, the motion pertained to the execution of the original sentence. Further, with respect to the due process rights of petitioner, we have recognized that "the revocation of parole (probation) is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole (probation) revocation." *Sygman v. Whyte*, 165 W. Va. 356, 359, 268 S.E.2d 603, 605 (1980) (citation omitted). Therefore, we find under the very limited circumstances of this case, that the circuit court retained jurisdiction for the purposes of executing the original sentence.

Petitioner finally complains that the circuit court erred in revoking his supervised release because of his homeless status. Petitioner argues that pursuant to *State v. Hargus*, 232 W. Va. 735, 753 S.E.2d 893 (2013), a five year sentence imposed by the circuit court for a "purely technical" violation violates article 3, section 10 of the West Virginia Constitution and the Fourteenth Amendment of the United States Constitution. Petitioner asserts that his sentence is so disproportionate to the crime in this matter that it shocks the conscience.

We disagree. In *Hargus*, we found that a five year term of imprisonment imposed on a defendant was not unconstitutionally disproportionate and held that, "West Virginia Code § 62–12–26(g)(3) (2011) does not facially violate procedural due process principles of the Fourteenth Amendment to the Constitution of the United States or Article III, § 10 of the Constitution of West Virginia." Syl. Pt. 5, *Hargus*. In addition, there are two tests to determine whether a sentence is so disproportionate to a crime that it violates the West Virginia Constitution. The subjective test is found in syllabus point five of *State v. Cooper,* 172 W. Va. 266, 304 S.E.2d 851 (1983), which provides:

> Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

When it cannot be found that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test which provides:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

Syl. Pt. 5, *Wanstreet v. Bordenkircher,* 166 W. Va. 523, 276 S.E.2d 205 (1981).

This Court finds that the circuit court's order does not violate the constitutional proportionality principle. Petitioner was convicted and sentenced under the extended supervision statute for the offense of sexual assault in the third degree, perpetrated upon a minor. Further, it is clear from the record that petitioner refused suitable placement, and could not provide a verifiable residence which is a requirement in order to ensure the safety and security of the community. For these reasons, this Court finds that the post-revocation sanctions levied against petitioner do not shock the conscience or offend fundamental notions of human dignity.

This Court also finds that petitioner's post-revocation sanctions do not violate the objective test for constitutional disproportionality. Petitioner has failed to specifically address how the nature of the offense, the legislative purpose behind the punishment, and a comparison of other offenses within the same jurisdiction compel the finding that his post-revocation sanctions violate our constitution's proportionality principle.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 9, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker